**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**LYNCHBURG DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| A.G. Dillard, Inc., | ) | **Case No. 22-60115-RBC** |
| | ) | |
| Debtor. | ) | |
| | ) | |
| 1st Source Bank, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| A.G. Dillard, Inc., | ) | |
| | ) | |
| Respondent. | ) | |

**MOTION FOR RELIEF FROM AUTOMATIC STAY OR,**
**IN THE ALTEERNATIVE, FOR ADEQUATE PROTECTION**

COMES NOW 1st Source Bank (the "**Movant**"), by counsel, a creditor in the above-mentioned case, and respectfully requests that the automatic stay provisions of 11 U.S.C. § 362 be terminated so as to allow Movant to retrieve and dispose of the Collateral (defined below), or, in the alternative, that A.G. Dillard, Inc. (the "**Debtor**") be ordered to provide Movant with adequate protection payments pursuant to 11 U.S.C. 363(e) (the "**Motion**"). In support of the Motion, Movant respectfully states as follows:

Michael E. Hastings, Esq. (VSB No. 36090)
Timothy J. Lovett, Esq. (VSB No. 97438)
Woods Rogers PLC
10 S. Jefferson Street, Suite 1800
Roanoke, Virginia 24011
Phone: (540) 983-7568
Fax: (540) 983-7711
mhastings@woodsrogers.com
tlovett@woodsrogers.com

*Counsel for 1st Source Bank*

**Jurisdiction and Venue**

1.      The United States Bankruptcy Court for the Western District of Virginia has jurisdiction over this Motion pursuant to 11 U.S.C. § 362, 11 U.S.C. § 363, 28 U.S.C. § 1334, 28 U.S.C. § 157(a) and Federal Rules of Bankruptcy Procedure 4001 and 9014.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 362(d) and 363(e) of title 11 of the United States Code.

**Background**

4.      On February 9, 2022 (the "**Petition Date**"), Debtor filed its voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), thereby commencing the above-captioned case (the "**Bankruptcy Case**").

5.      The Debtor and Movant are parties to a *Loan and Security Agreement* dated October 20, 2010 ("**Loan Agreement**") (attached hereto as **Exhibit A**) wherein Movant agreed upon the terms by which the Movant made its initial loan to the Debtor and upon which the Movant would lend money to Debtor from time-to-time in the future. The Loan Agreement contemplated that each loan would be memorialized by a  separate promissory note, addendum, schedule or other separate document describing the principal amount, interest rate, payment amount, payment due dates, and maturity dates (the "**Notes,**" together with the Loan Agreement, the "**Loan Documents**").  In addition, the Loan Agreement provided that the Debtor granted a lien and security interest in the following property (herein, the "**Collateral**"):

> the aggregate of (a) the property described in any addendum, schedule or other separate document that, by its terms, is made a part of this Agreement; plus (b) any other Assets of Customer in which Customer has granted Bank a security interest under any other existing or future agreement, whether or not related to this Agreement. If the property included in the Collateral is Equipment

2

(whether or not it is held as inventory)("Equipment"), then Collateral also includes: (i) all logs, records and manuals relating to the Equipment; (ii) all present and future attachments, accessories, parts, repairs, additions, accessions, substitutions, exchanges, and replacements identified with and relating to the Equipment; (iii) all present and future rights of Customer relating to the physical condition of the Equipment, including under any warranties, service or maintenance agreements, storage agreements or insurance policies; (iv) all present and future rights of Customer in connection with the use and/or operation of the equipment by any third party under any lease, rental agreement or license; and (v) proceeds of the Equipment and any of (i) through (iv).

Alan G. Dillard III personally guaranteed payment of the Debtor's obligations to the Movant under the Loan Agreement pursuant to a Guaranty of Payment dated as of October 20, 2010 (the "**Guaranty**").

6.     Pursuant to the Loan Documents, the Debtor executed and delivered to the Movant the following Notes, including the grant of security interests in the following collateral (collectively, "**Collateral**"):

A.     On April 24, 2018, Movant loaned Debtor $175,054.00 pursuant to the terms of a Note of the same date, including the grant of a security interest in a 2018 Kenworth T370 Mechanics Truck Serial No. 2NKHHJ7XXKM245767 with Tool Body and Crane (herein, "**Note 1**"). Note 1 provided for a 5.19% annual interest rate, and monthly payments of $2,655.26 for 59 months, with a final payment of $47,788.99 due on the April 30, 2023 maturity date. A true copy of Note 1 is attached hereto as **Exhibit B**.

B.     On May 29, 2018, Movant loaned Debtor $364,660.00 pursuant to the terms of a Note of the same date, including the grant of a security interest in a 2019 Kenworth T880 Truck Serial No. 1NKZXP0X3KJ251048 and a 2019 Kenworth T880 Truck Serial No. 1NKZXP0X3KJ251049 (herein, "**Note 2**"). Note 2 provided for a 5.19% annual interest rate, and

monthly payments of $5,531.58 for 59 months, with a final payment of $100,574.85 due on the

July 3, 2023 maturity date. On July 25, 2018, Debtor executed an amendment to Note 2 changing

the final payment amount to $100,301.27. A true copy of Note 2 and its amendment are attached

hereto collectively as **Exhibit C**.

C.     On June 27, 2018, Movant loaned Debtor $176,649.00 pursuant to the

terms of a Note of the same date, including the grant of a security interest in a 2018 Kenworth

T370 Fuel/Lube Truck Serial No. 2NKHHJ7X9JM224925 ("**Note 3**"). Note 3 provided for a

5.24% annual interest rate, and monthly payments of $2,683.63 for 59 months, with a final

payment of $48,841.59 due on the July 1, 2023 maturity date. A true copy of Note 3 is attached

hereto as **Exhibit D**.

D.     On September 5, 2018, Movant loaned Debtor $177,024.00 pursuant to

the terms of a Note of the same date, including the grant of a security interest in a 2019 Kenworth

T370 Mechanic's Truck Serial No. 2NKHHJ7Z6KM258936 ("**Note 4**"). Note 4 provided for a

5.24% annual interest rate, and monthly payments of $2,689.07 for 59 months, with a final

payment of $48,892.07 due on the September 7, 2023 maturity date. A true copy of Note 4 is

attached hereto as **Exhibit E**.

E.     On September 12, 2018, Movant loaned Debtor $72,370.00 pursuant to

the terms of a Note of the same date, including the grant of a security interest in a 2019 Rhodes

Warrior (32') Dump Trailer Serial No. 1A9SD3236KP432903 ("**Note 5**"). Note 5 provided for a

5.35% annual interest rate, and monthly payments of $1,379.87 for 59 months, with a September

13, 2023 maturity date. A true copy of Note 5 is attached hereto as **Exhibit F**.

F.     On December 11, 2018, Movant loaned Debtor $557,743.40 pursuant to

the terms of a Note of the same date, including the grant of a security interest in a Gomaco GT-

3300 Concrete Curb Machine Serial No. 903100-357-3300 with Sitech SPS930 GPS System and 4 Stations ("**Note 6**"). Note 6 provided for a 5.48% annual interest rate, and monthly payments of $9,132.10 for 59 months, with a final payment of $114,954.48 due on the December 13, 2023 maturity date. A true copy of Note 6 is attached hereto as **Exhibit G**.

      G.     On April 22, 2019, Movant loaned Debtor $178,360.00 pursuant to the terms of a Note of the same date, including the grant of a security interest in a 2020 Kenworth T880 Dump Truck VIN 1NKZXP0XXLJ341525 with Rhodes 17' Steel Body ("**Note 7**"). Note 7 provided for a 5.07% annual interest rate, and monthly payments of $2,724.83 for 59 months, with a final payment of $47,100.87 due on the May 21, 2024 maturity date. A true copy of Note 7 is attached hereto as **Exhibit H**.

      H.     On April 23, 2019, Movant loaned Debtor $178,110.00 pursuant to the terms of a Note of the same date, including the grant of a security interest in a 2020 Kenworth T880 Dump Truck VIN 1NKZXP0X1LJ341526 with Rhodes 17' Steel Body ("**Note 8**"). Note 8 provided for a 5.07% annual interest rate, and monthly payments of $2,724.83 for 59 months, with a final payment of $47,100.87 due on the June 5, 2024 maturity date. A true copy of Note 8 is attached hereto as **Exhibit I**.

      I.     On April 23, 2019, Movant loaned Debtor $178,360.00 pursuant to the terms of a Note of the same date, including the grant of a security interest in a 2020 Kenworth T880 Dump Truck VIN 1NKZXPOX8LJ341524 with Rhodes 17' Steel Body ("**Note 9**"). Note 9 provided for a 5.07% annual interest rate, and monthly payments of $2,724.83 for 59 months, with a final payment of $47,100.87 due on the May 6, 2024 maturity date. On May 6, 2019, Debtor executed an amended Note 9 changing the final payment amount to $47,119.27. A true copy of Note 9 and its amendment are attached hereto as **Exhibit J**.

J.       On June 18, 2019, Movant loaned Debtor $4,670,373.44 pursuant to the terms of a Note of the same date ("**Note 10**") (a true copy of Note 10 is attached hereto as **Exhibit K**). In Note 10, Debtor granted Movant a security interest in the following collateral and set forth the following repayment terms:

i.       Caterpillar Model 299D2 Skid Steer Serial No. FD201412 – 4.9% annual interest, 71 monthly payments of $234.50, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

ii.       Caterpillar Model 299D2 Skid Steer Serial No. FD203541 – 4.9% annual interest, 71 monthly payments of $1,024.74, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

iii.       Caterpillar Model 299D2 Skid Steer Serial No. FD203778 – 4.9% annual interest, 71 monthly payments of $976.11, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

iv.       Caterpillar Model 299D2 Skid Steer Serial No. FD204585 – 4.9% annual interest, 71 monthly payments of $1,342.07, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

v.       Caterpillar Model 299D2 Skid Steer Serial No. FD204586 – 4.9% annual interest, 71 monthly payments of $1,318.77, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

vi.       Caterpillar Model 299D2 Skid Steer Serial No. FD204588 – 4.9% per annum interest, 71 payments of $1,365.14 then one remaining payment of principal and interest due at maturity date of June 21, 2025.

vii.       Caterpillar Model 299D2 Skid Steer Serial No. FD204589 – 4.9% annual interest, 71 monthly payments of $1,365.14, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

      viii.    Caterpillar Model 299D2 Skid Steer Serial No. FD204709 – 4.9% annual interest, 71 monthly payments of $1,796.12, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

      ix.    Caterpillar Model 305E2CR Hydraulic Excavator Serial No. H5M06383 – 4.9% annual interest, 71 monthly payments of $817.00, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

      x.    Caterpillar Model 305E2CR Hydraulic Excavator Serial No. H5M03126 – annual interest, 71 monthly payments of $346.87, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

      xi.    Caterpillar Model 305E2CR Hydraulic Excavator Serial No. H5M06544 – 4.9% annual interest, 71 monthly payments of $810.38, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

      xii.    Caterpillar Model 305E2CR Hydraulic Excavator Serial No. H5M06650 – 4.9% annual interest, 71 monthly payments of $827.22, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

      xiii.    Caterpillar Model 305E2CR Hydraulic Excavator Serial No. H5M07746 – 4.9% annual interest, 71 monthly payments of $951.08, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

      xiv.    Caterpillar Model 305E2CR Hydraulic Excavator Serial No. H5M08346 – 4.9% annual interest, 71 monthly payments of $1,184.31, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

      xv.    Caterpillar Model 305E2CR Hydraulic Excavator Serial No. H5M08351 – annual interest, 71 monthly payments of $1,184.31, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

xvi.    Caterpillar Model 314ELCR Hydraulic Excavator Serial No. ZJT01445 – 4.9% annual interest, 71 monthly payments of $1,297.50, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

xvii.    Caterpillar Model 320ELRR Hydraulic Excavator Serial No. TFX00767 – 4.9% annual interest, 71 monthly payments of $1,566.12, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

xviii.    Caterpillar Model 320ELRR Hydraulic Excavator Serial No. TFX01217 – 4.9% annual interest, 71 monthly payments of $1,384.46, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

xix.    Caterpillar Model 323-07 Hydraulic Excavator Serial No. RAZ00750 – 4.9% annual interest, 71 monthly payments of $3,070.62, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

xx.    Caterpillar Model 323FL Hydraulic Excavator Serial No. YEJ10254 – 4.9% annual interest, 71 monthly payments of $2,535.62, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

xxi.    Caterpillar Model 326FL Hydraulic Excavator Serial No. WGL00260 – 4.9% annual interest, 71 monthly payments of $1,238.72, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

xxii.    Caterpillar Model 330FL Hydraulic Excavator Serial No. MBX10661 – 4.9% annual interest, 71 monthly payments of $3,736.92, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

xxiii.    Caterpillar Model 335F Hydraulic Excavator Serial No. SGL20108 – 4.9% annual interest, 71 monthly payments of $4,634.19, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

xxiv.   Caterpillar Model 336FL Hydraulic Excavator Serial No. RKB01866 – 4.9% annual interest, 71 monthly payments of $2,254.90, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

xxv.   Caterpillar Model 420F2IT Integrated Tool Carrier Serial No. HWD03014 – 4.9% annual interest, 71 monthly payments of $1,695.40, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

xxvi.   Caterpillar Model 730C Articulated Hauler Serial No. TFF01346 – 4.9% annual interest, 71 monthly payments of $2,254.00, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

xxvii.   Caterpillar Model 730C2 Articulated Hauler Serial No. 2T400701 – 4.9% annual interest, 71 monthly payments of $5,122.73, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

xxviii.   Caterpillar Model 730C2 Articulated Hauler Serial No. 2T400857 – 4.9% annual interest, 71 monthly payments of $5,376.32, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

xxix.   Caterpillar Model 730C2 Articulated Hauler Serial No. 2T401040 - 4.9% annual interest, 71 monthly payments of $5,616.09, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

xxx.   Caterpillar Model 815F11 Compactor Serial No. BYN01193 – 4.9% annual interest, 71 monthly payments of $2,948.33, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

xxxi.   Caterpillar Model CB34B Compactor Serial No. XB400625 – 4.9% annual interest, 71 monthly payments of $965.44, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

xxxii.    Caterpillar Model CB8 Compactor Serial No. JL400120 – 4.9% annual interest, 71 monthly payments of $1,853.24, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

xxxiii.   Caterpillar Model CP44 Compactor Serial No. MPC00331 – 4.9% annual interest, 71 monthly payments of $583.77, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

xxxiv.   Caterpillar Model CP44B Compactor Serial No. 4P400246 – 4.9% annual interest, 71 monthly payments of $1,977.40, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

xxxv.    Caterpillar Model CS54B Compactor Serial No. CS500528 – 4.9% annual interest, 71 monthly payments of $1,748.24, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

xxxvi.   Caterpillar Model CS56B Compactor Serial No. S5600217 – 4.9% annual interest, 71 monthly payments of $594.00, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

xxxvii.  Caterpillar Model D6K2LGP Crawler Tractor Serial No. EL700491 – 4.9% annual interest, 71 monthly payments of $3,553.75, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

xxxviii. Caterpillar Model D6K2LGP Crawler Tractor Serial No. JTR00893 – 4.9% annual interest, 71 monthly payments of $2,664.82, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

xxxix.   Caterpillar Model D6NXL Crawler Tractor Serial No. PER00698 – 4.9% annual interest, 71 monthly payments of $890.28, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

xl.      Wacker-Neuson Model RTLX-SC3 Roller Serial No. 24331969 – 4.9% annual interest, 71 monthly payments of $54.13, then one remaining payment of principal and interest due at maturity date of June 21, 2025.

K.      On June 18, 2019, Movant loaned Debtor $181,909.44 pursuant to the terms of a Note of the same date, including the grant of a security interest in a 2020 Kenworth T880 Truck VIN 1NKZL40X0LJ385544 with Jerr-Dan 28'x102" (15-ton) Carrier ("**Note 11**"). Note 11 provided for a 5.1% annual interest rate, and monthly payments of $2,910.23 for 59 months, with a final payment of $39,451.18 due on the June 19, 2024 maturity date. A true copy of Note 11 is attached hereto as **Exhibit L**.

7.      On January 11, 2022, Movant delivered a demand letter to Debtor informing Debtor of its payment default on virtually every Note and requesting payment, a true copy of which is attached hereto as **Exhibit M**. As detailed in the demand letter, Debtor had fallen into arrears in the amount of $71,412.31, with payments on some Notes being overdue by nearly two months. Debtor failed to make any payments; therefore, on January 27, 2022, Movant delivered a second demand letter accelerating the outstanding indebtedness of the Debtor, a true copy of which is attached hereto as **Exhibit N**. As of January 27, 2022, Debtor's outstanding obligation to Movant was at least $1,253,245.89 pursuant to the terms of the Loan Documents, not including default interest, attorney fees and other charges provided in the Loan Documents.

8.      By the Petition Date, Movant was owed $1,256,182.57 pursuant to the terms of the Loan Documents, not including attorney fees and other charges provided in the Loan Documents. *See* Payoff and Remittance Letter dated February 16, 2022, a true copy of which is attached **Exhibit O**.

## Request for Relief

9.      Movant respectfully requests that this Court grant it relief from the automatic stay provided in Section 362 of the Bankruptcy Code to permit Movant to exercise its rights under the Loan Documents under applicable state law.   In the alternative, Movant respectfully requests pursuant to Section 363 of the Bankruptcy Code that this Court enter an order providing for adequate protection of Movant's interest in the Collateral as defined in Section 361 of the Bankruptcy Code.

## Basis for Relief

10.      Section 362(d)(1) of the Bankruptcy Code provides that "[o]n request of a party in interest, and after notice and a hearing, the court shall grant relief from the stay provided for under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay…for cause, including the lack of adequate protection of an interest in property of such party in interest." Since the Bankruptcy Code does not provide a definition of what constitutes sufficient "cause" to modify the stay, "the courts must determine what discretionary relief is appropriate [under section 362(d)(1) of the Bankruptcy Code] on a case-by-case basis." *Claughton v. Mixson*, 33 F.3d 4, 6 (4th Cir. 1994). A movant seeking relief from the automatic stay may meet its burden of proving that its interest in property is not adequately protected by demonstrating that the "debtor has a history of failing to make payments under a promissory note." *Maines v. Wilmington Savings Fund Society*, 2016 WL 3661577, at *3 (W.D. Va. July 1, 2016) (finding movant entitled to stay relief when creditor is under secured and debtor had missed multiple loan payments); *In re James River Associates*, 148 B.R. 790, 797 (E.D. Va. 1992) ("A continued failure to make monthly payments under loan documents can constitute cause for granting relief from the automatic stay."); *In re M.D. Moody & Sons, Inc.*, 2010 WL 11719122, at *11-13 (Bankr. M.D. Fla. 2010).

11.     Cause exists to terminate the automatic stay's protection covering the Movant's Collateral. As detailed above, the Collateral consists almost entirely of equipment used for excavating or transport. As such, the use of such equipment promises a deterioration in the quality of the equipment and thus a depreciation in value. According to a presentation given at CONEXPO-CON/AGG, an annual construction industry education and networking event, in years 1-3, a typical crawler excavator will suffer 32 percent depreciation in value; in years 3-7 the typical crawler excavator will depreciate a further 23 percent. *See Construction Equipment Life Cycler Costs: Using Data for Better Decision Making*, CONEXPO-CON/AGG, https://www.conexpoconagg.com/news/construction-equipment-life-cycle-costs-using-data, (last visited Feb. 16, 2022). Additionally, bankruptcy courts across the country have recognized the decrease in value caused by a debtor's use of excavation equipment. *See In re Falwell Excavating Co., Inc.*, 47 B.R. 217, 219 (Bankr. W.D. Va. 1985); *In re Roe Excavating, Inc.*, 52 B.R. 439, 443 (Bankr. S.D. Ohio 1984); *In re M.D. Moody & Sons, Inc.*, 2010 WL 11719122, at *11-13.

12.     The Debtor's proposed budget included in its Motion for Entry of Interim and Final Orders (I) Authorizing Use of Cash Collateral and (2) Granting Adequate Protection (Dkt #4) ("**Cash Collateral Motion**"), demonstrates that Debtor intends to continue operating its business, and Debtor is continuing to use the Collateral. Since the Debtor's business is providing excavation services – work that puts enormous wear and tear on equipment and requires regular correct maintenance on the equipment – the Collateral will continue suffer a decline in value. To allow the Debtor to continue its use of the Collateral, thereby decreasing the Collateral's value through depreciation, while providing no protection to Movant would cause Movant to suffer irreparable injury, loss, and damage.

13.     Further cause exists to lift the automatic stay as the Debtor failed repeatedly to make payments under the various Notes. As detailed above, prior to the Petition Date, Debtor had already fallen into default on its obligations under the Notes. Debtor was given multiple opportunities to cure its defaults, but failed to do so. Debtor's Cash Collateral Motion budget does not include any payments on the Notes during this bankruptcy proceeding. This lack of payment, combined with an ever-shrinking equity cushion, is sufficient cause to lift the automatic stay so that Movant can protect its interests. *In re James River Associates*, 148 B.R. at 797.

### Alternative Relief

14.     In the alternative, Movant is entitled to adequate protection of its interest in the Collateral. A debtor is generally able to continue to use collateral covered by a lien in its ordinary course of business without the need for notice and a hearing under 11 U.S.C. § 363(c). However, pursuant to 11 U.S.C. § 363(e), "at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."

15.     Adequate protection, as used in 11 U.S.C. §§ 362 and 363, can be provided to a creditor by:

> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
>
> (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
>
> (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an

administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.

16.     While it currently enjoys a modest equity cushion, Movant's cushion shrinks daily as interest accumulates on the overdue Notes and the value of the Collateral deteriorates based on the use. In order to protect its interest, Movant believes that, at the very least, Debtor should be required to make a cash payment or periodic cash payments to Movant in an amount equal to the expected decrease in value that accompanies Debtor's continued use of the Collateral.

17.     Movant intends to introduce evidence of the diminution of the value of the Collateral at the trial of this Motion.

### Notice

18.     Pursuant to Rules 4001(a)(1), 7004, and 9014 of the Federal Rules of Bankruptcy Procedure, Movant has provided notice of this Motion to the Debtor, the Office of the U.S. Trustee, the Official Committee of Unsecured Creditors.

WHEREFORE, pursuant to 11 U.S.C. Section 362(d)(1), Movant respectfully requests that the automatic stay in effect pursuant 11 U.S.C. Section 362 be terminated as to it, in order that it may protect its interests or, in the alternative, pursuant to 11 U.S.C. 363(e), that this Court enter an Order compelling the Debtor to make payments adequate to protect the Movant's interest in the Collateral from a decrease in value.

Date: February 25, 2022                           Respectfully submitted,

                                                  1ST SOURCE BANK

                                                  By: /s/ Michael E. Hastings

Michael E. Hastings (Virginia Bar No. 36090)
Timothy J. Lovett (Virginia Bar No. 97438)
WOODS ROGERS PLC
10 S. Jefferson Street, Suite 1800
Roanoke, Virginia  24011
T:  (540) 983-7568
F:  (540) 983-7711
mhastings@woodsrogers.com
tlovett@woodsrogers.com

  *Counsel for Movant*

## <u>CERTIFICATE OF SERVICE</u>

  I hereby certify that on this 25th day of February 2022, a true and correct copy of the foregoing was sent electronically to the Office of the United States Trustee, Counsel for the Debtor, and to Official Committee of Unsecured Creditors, and to any party receiving ECF Notices in these cases.

    /s/ Michael E. Hastings   
    Michael E. Hastings (Virginia Bar No. 36090)
    WOODS ROGERS PLC
    10 S. Jefferson Street, Suite 1800
    Roanoke, Virginia  24011
    T:  (540) 983-7568
    F:  (540) 983-7711
    mhastings@woodsrogers.com

# EXHIBIT A


# Source.
# Bank

## LOAN AND SECURITY AGREEMENT

**Document Date: October 18, 2010**

| | | |
|---|---|---|
| Customer (Exact Legal Name): A.G. DILLARD, INC. | | |
| Address: 295 MEMORY LANE | | |
| City/State/Zip Code: TROY, VA 22974 | | |
| Phone: (434) 977-3750 | Fax: (434) 979-8026 | Email: |

1. 1st Source Bank ("Bank") has agreed to lend money to the individual or entity identified above as the "Customer", and may agree to lend additional money to Customer from time-to-time. The principal amount, the interest rate, payment amount, payment due dates, the maturity date and other particulars for each loan shall be set forth in a promissory note, addendum, schedule or other separate document containing such terms (each a "Note"). Customer will make payments when due and payable without offset, defense or counterclaim. All payments will be given tentative credit when received by Bank in Indiana and posted to Customer's account in accordance with standard Bank practices, subject to final collection. All final payments shall be made in immediately available collected funds unless Bank agrees otherwise. All payments shall be applied first to interest, then to principal unless otherwise provided in this Agreement. Interest shall accrue based on a 360-day year and the days actually elapsed.

2. To secure repayment of the loans and performance of the other obligations of Customer under this Agreement, and also to secure all other monetary and non-monetary obligations of Customer to Bank under any other agreement, whether absolute or contingent, direct or indirect, now existing or hereafter arising, Customer grants to Bank a continuing security interest in the "Collateral" as defined in the following sentence. "Collateral" means the aggregate of (a) the property described in any addendum, schedule or other separate document that, by its terms, is made a part of this Agreement; plus (b) any other assets of Customer in which Customer has granted Bank a security interest under any other existing or future agreement, whether or not related to this Agreement. If the property included in Collateral is equipment (whether or not held as inventory)("Equipment"), then Collateral also includes (i) all logs, records and manuals relating to the Equipment, (ii) all present and future attachments, accessories, parts, repairs, additions, accessions, substitutions, exchanges and replacements identified with or relating to the Equipment; (iii) all present and future rights of Customer relating to the physical condition of the Equipment, including under any warranties, service or maintenance agreements, storage agreements or insurance policies; (iv) all present or future rights of Customer in connection with the use and/or operation of the Equipment by any third party under any lease, rental agreement or license; and (v) proceeds of the Equipment and any of (i) through (iv).

3. Customer represents and warrants that:

   (a) Customer is a corporation organized and in good standing under the laws of Virginia, and in good standing in all jurisdictions where qualification is necessary;

   (b) if applicable, the execution and delivery hereof, and all other agreements or writings by and between Customer and Bank have been duly authorized by appropriate action of Customer's governing body;

   (c) Customer is the absolute owner of the Collateral and has full power and authority to grant a security interest in the Collateral to Bank;

   (d) the Collateral is free and clear from all liens, encumbrances, security interests, or other claims other than the security interest of Bank;

   (e) none of the terms of this Agreement or any other agreements between Customer and Bank are in violation of any agreements Customer may have with any third party;

   (f) all financial statements, credit applications, and other information Customer has provided to Bank are truthful and accurate, and all financial statements and other information Customer delivers or provides to Bank in the future also will be truthful and accurate;

   (g) since the date of the most recent financial statements delivered to Bank, there has been no material adverse change in Customer's financial condition or prospects;

   (h) Customer understands and acknowledges that Bank is neither the manufacturer nor distributor of the Equipment and has no knowledge of or familiarity with it. Customer will be accepting the Equipment "as is" and Bank has not made, and will not make, any representation or warranty, express or implied, as to the value, condition, quality, material, workmanship, design, capacity, merchantability, durability, fitness or suitability of the Equipment for any use or purpose, or any other representation or warranty whatsoever, express or implied; and

   (i) Customer acknowledges that by requiring insurance herein (or in the insurance letter) as provided below, Bank does not represent that coverage and limits will necessarily be adequate to protect Customer and such coverage and limits shall not be deemed as a limitation on Customer's liability under Customer's indemnities otherwise set forth in this Agreement.

4. Customer will, at its own cost and expense as applicable:

   (a) deliver to Bank from time-to-time its financial statements, in the same form and type as submitted with Customer's loan request. Customer will deliver its full-year annual financial statements each year as soon as available, but in any event not later than one hundred twenty (120) days after the close of each of its fiscal years, together with the opinion or other report of the accountant(s) (if any) retained to compile, review or audit the

financial statements. Bank may specify a different form, type or frequency in any addendum, schedule or other separate document that, by its terms, is made a part hereof, or as Bank may reasonably request in any written notice delivered by Bank to Customer;

(b) promptly deliver to Bank such other information and documents regarding the loans, the Collateral, and the business affairs, operations, financial condition or other properties of Customer as Bank may reasonably request from time-to-time;

(c) at all times insure the Collateral with companies acceptable to Bank against loss, collision, theft, vandalism, or other physical damage, liability and other risks and hazards, as Bank reasonably requires, giving due consideration to the kinds of coverage that owners of the property-type(s) included in the Collateral commonly obtain, for an amount(s) not less than the amount(s) set forth in any "Insurance Letter" delivered by Bank to Customer or Customer's insurance agent in connection with any of the Collateral, under policy(ies) of insurance that include a standard long form, loss payable endorsement in favor of Bank, "breach of warranty" or similar coverage against any acts, omissions or neglect by Customer or any other party (other than Bank) that otherwise would negate coverage under such policy(ies), and the insurer's agreement to give written notice to Bank thirty (30) days (or such lesser period as Bank may reasonably accept) before cancellation of or any material change to any such policy(ies) becomes effective as to Bank, whether such cancellation or change is at the request or direction of Customer or the insurer, provided however, that Bank may from time-to-time, upon written notice to Customer, modify or add other insurance requirements so that the scope and amount of coverage required hereunder is consistent with best industry practice and the reasonable commercial interests of Bank; and will deliver to Bank certificates of insurance or other evidence reasonably satisfactory to Bank of compliance with the foregoing insurance requirements;

(d) keep the Collateral safe and secure, in good order, repair, operating condition and appearance, use and operate the Collateral with care and only with qualified personnel in the ordinary course of Customer's business and in conformity with all laws and regulations, and keep accurate and complete records concerning the Collateral;

(e) pay when due any tax, assessment, levy or charge on or against the Collateral by any governmental authority or other third party, and not suffer or permit, and promptly remove or cause to be removed, any lien, encumbrance, claim, security interest, mechanic's lien, levy, attachment or other interest of any individual or entity other than Bank upon or against the Collateral, except for any of the foregoing that Customer is contesting in good faith;

(f) permit Bank, at all times during business hours, to inspect all or any portion of the Collateral, wherever located, and to inspect, audit, check, and make copies of or extracts from, Customer's books, records, correspondence and other data relating to Customer's financial condition or the Collateral;

(g) do all such acts and execute all instruments, financing statements or other documents as reasonably requested by Bank for the purpose of fully carrying out and effectuating this Agreement and its intent or which Bank reasonably deems necessary to protect the Collateral or perfect the security interests granted herein; and

(h) not mortgage, sell, lease, transfer, set over, abandon, assign, grant a security interest in, permit its identity to be lost, or otherwise dispose of Collateral or any interest therein or any part thereof, except as may be provided in any applicable addendum, schedule or other separate document that, by its terms, is made part of this Agreement.

5.  Other monetary obligations of Customer hereunder include the following:

(a) If Customer is ten (10) days late in making a payment, then Customer shall pay a delinquency charge equal to five percent (5%) of the amount of the late payment (both principal and interest), and Bank shall assess such delinquency charge on the tenth (10th) calendar day after the payment due date. After a default as defined below has continued for 30 days and as long as the default continues, Bank may by notice of default charge interest at the rate set forth in the applicable Note plus three percent (3%) per annum (the "Default Rate"). If imposed, the Default Rate shall apply retroactively to the date the default began.

(b) Customer also shall pay to Bank, or if requested by Bank, directly to the applicable vendor or other third party, any fees, costs, expenses, penalties or interest incurred by Bank in connection with this Agreement, any Note or any of the Collateral, including without limitation, fees, costs or expense of: (i) filing, registering or recording this Agreement and Bank's interests under this Agreement, or any UCC financing, continuation or termination statement or similar official filings or registrations, (ii) any transfer or stamp taxes, (iii) inspection, appraisal or monitoring of the Collateral as Bank may conduct for itself or obtain from a third party in its discretion, (iv) exercising its rights herein or under applicable law to protect its interest in the Collateral by performing obligations of Customer in the event Customer fails to timely perform same, (v) taking possession of, holding, preparing for sale or other disposition and selling or otherwise disposing of the Collateral, and (vi) all attorneys' and other professionals retained by Bank in connection with any of the foregoing, or any exercise of other remedies upon occurrence of a default, whether such fees, costs or expenses are incurred before or after commencement of any bankruptcy case or other insolvency proceeding. All of the foregoing fees, costs or expenses thus incurred or expended by Bank, and any other monies paid by Bank to collect Customer's obligations under any Note or protect its interests in the Collateral shall, at Bank's option, first each instance of fees, cost or expense so incurred or paid by Bank, either be added to the balance of the applicable Note or if more than one Note, then pro-rated among the Notes, and be subject to all of the provisions of this Agreement, or be paid immediately by Customer upon demand by Bank, with interest accruing on the amount so demanded at the Default Rate.

(c) Customer will at all times be liable to and indemnify and hold Bank harmless from and against any and all claims and liabilities on account of death, bodily injury or property damage occasioned by the use or ownership of Collateral.

6.  Customer will be in default if any one or more of the following events takes place:

(a) Customer fails to make any payment when due under (i) this Agreement, (ii) any Note, (iii) any addendum, schedule or other separate document delivered by Customer or Bank that relates to this Agreement, or (iv) under any other agreement between Customer and Bank;

(b) Customer fails to make payment when due or otherwise fails to perform under any agreement for borrowed money, or any obligation of Customer for borrowed money is declared due and payable before its original maturity date;

(c) Customer or any guarantor fails to perform any obligation under this Agreement or any Note, any addendum, schedule or other separate document that, by its terms, is made a part hereof, any guaranty, or under any other agreement between Customer and Bank, provided, however, that, to the extent any such obligation, other than a payment or insurance obligation, can still be performed, such failure continues for more than ten (10) business days after delivery by Bank of a written demand to perform;

(d) any representation or warranty made by Customer in this Agreement is false in any material respect when made, or subsequently becomes no longer true (except for representations and warranties that become untrue solely due to the passage of time);

(e) Customer, or any guarantor of Customer's obligations to Bank, dies, dissolves, merges with another entity, suspends or terminates his/her/ its usual business, is unable to pay his/her/its debts as they become due, makes an assignment for the benefit of creditors, applies to any court for the appointment of a trustee or a receiver of all or a substantial part of his/her/its assets or commences any proceeding under any bankruptcy, receivership, insolvency, dissolution or liquidation law of any jurisdiction, or any other individual or entity commences such proceedings against Customer or any such guarantor and Customer or such guarantor acquiescence thereto, or denies liability to Bank or seeks to terminate any agreement with Bank;

(f) Bank, in good faith, believes that the prospect of payment and performance hereunder has substantially diminished or that there is a material adverse change in the financial condition or operations of Customer or any guarantor; or

(g) Customer's principals as of the inception of this Agreement no longer control or operate the business of Customer.

7. Upon the occurrence of any of the foregoing events of default and at any time thereafter that any event of default is continuing, Bank may do any or all of the following, cumulatively: (i) declare all or any part of the remaining unpaid indebtedness of Customer to Bank to be immediately due and payable, together with all unpaid interest and any other accrued and unpaid monetary obligations of Customer hereunder; (ii) exercise all rights and remedies provided in this Agreement, under the Uniform Commercial Code as in effect in all pertinent jurisdictions and under any other applicable law, treaty or convention, including without limitation the right (a) to immediate possession of all or a portion of the Collateral, (b) to require Customer to assemble the Collateral and deliver it to Bank at a place designated by Bank that is reasonably convenient to both parties, (c) to enter upon any premises on which Collateral or any portion thereof may be located and take possession of same, at any time or times, with or without demanding delivery, with or without judicial process, and with or without the assistance of others, (d) to dispose of Collateral on any premises, including those of Customer, (e) to setoff any property of Customer in the possession or control of Bank, and (f) in Bank's sole discretion, to undertake payment or other performance of any obligation of Customer hereunder that Customer has failed to perform.

In connection with any sale or other disposition of the Collateral by Bank, the requirements of reasonable notice shall be met if such notice is given to Customer and any guarantors at least ten (10) days before the date of any public sale or the date after which any private sale or other disposition of Collateral is to be made.

Customer's obligation to repay each Note and all other obligations of Customer hereunder are independent of the obligation of any other individual or entity that has signed this Agreement or other documents as a Customer or a guarantor ("Signer(s)"). It is not necessary for Bank to exercise its rights and remedies in respect of the Collateral before collecting from a Signer. Bank may extend the time for payment of any installment, reduce the size of monthly payments, release Collateral, release one or more Signers from their obligations, waive any right Bank might have against any Signer, extend, renew or agree to alter this Agreement, all without releasing other Signers from their obligations under this Agreement or any guaranty agreement. Any delay by Bank in exercising any rights or remedies hereunder or under any other instrument executed and delivered by Customer to Bank in connection herewith shall not operate as a waiver thereof and no single or partial exercise of any right or remedy shall preclude other or further exercise thereof, or the exercise of any other right or remedy. Bank's acceptance of late or partial payments, or waiver of any default, shall not establish a custom or course of conduct and the waiver by Bank of any default shall not constitute a waiver of any subsequent defaults, but shall be restricted to the default so waived.

8. If any part of this Agreement is determined to be contrary to any law or otherwise defective, then the other provisions of this Agreement shall not be affected thereby, but shall continue in full force and effect. If the effective interest rate, late charges, fees or expenses in connection with any indebtedness hereunder exceeds the maximum lawful amount, then the amount of such item shall be reduced to the maximum lawful amount, and the amount of any excess amount shall be applied to principal, and returned to Customer to the extent the indebtedness has been or is thereby paid in full. This application or refund process shall be Customer's sole remedy for excessive charges.

9. No transfer, renewal, extension or assignment of any loan or Note or this Agreement or any interest hereunder or thereunder, or loss, damage, or destruction of Collateral shall release Customer from Customer's obligations hereunder. Customer hereby waives presentment, demand, protest, notice of protest, notice of non-payment or dishonor, notice of sale of Collateral or any part thereof and all benefit of valuation, appraisement, and all exemption laws now in force or hereafter passed, including stay of execution and condemnation.

10. This Agreement (which includes each Note and all addenda, schedules or other separate documents that, by their terms, are made a part hereof) constitutes the entire agreement between Customer and Bank. Bank may by written notice to Customer correct any error or complete any blank space necessary to cause this Agreement to be accurate and effective. Except to the extent provided otherwise herein, this Agreement can be modified or amended only by a written document signed by both Customer and Bank. Customer hereby authorizes and ratifies any prior filing of a financing statement by Bank, and appoints Bank as its attorney-in-fact to affix Customer's signature to any form relating to the Collateral and to any Uniform Commercial Code financing statement(s), to take any other action Bank deems necessary to perfect and maintain perfection of the security interests provided herein or as may be required hereby and to do all other acts and things necessary to carry out the intent of this Agreement. Customer further appoints Bank as Customer's attorney-in-fact for Customer and in its name, place and stead (i) if any of the Collateral is covered by a certificate of title, for the sole and limited purpose of endorsing in its behalf any necessary forms required to apply for or transfer title and/or indicate Bank's security interest on the certificate of title as contemplated under this Agreement, (ii) to endorse the name of Customer to instruments and documents for purposes of collection or expedition, (iii) in obtaining payment, adjusting, canceling or settling any claims upon or under any insurance policies covering the Collateral, and hereby authorizes Bank to endorse the name of Customer on any checks, drafts or other instruments received or given in payment or liquidation of any claim under any such insurance policy, and (iv) to perform each and every act Bank deems necessary in connection with

this power of attorney. Customer further authorizes Bank to execute a power-of-attorney form in Customer's name if and to the extent necessary or convenient to confirm the foregoing grant of authority. The foregoing powers of attorney are coupled with interests in the underlying subject matter and are therefore irrevocable. Bank may assign this Agreement at any time. Customer may not assign its rights or delegate its duties under this Agreement without the express prior written consent of Bank.

11. With respect to any disputes between the parties, any proceeding by Bank against Customer may be brought by Bank in a court of competent jurisdiction located in the County of St. Joseph, State of Indiana (which court shall have jurisdiction to hear such matters) and Customer hereby irrevocably consents and submits itself to jurisdiction in any such court. Customer consents to service of process by first-class mail or messenger directed to Customer at Customer's address set forth above. Nothing herein affects or limits the rights of Bank to serve legal process in any other manner permitted by law or the rights of Bank to bring any action or proceeding against Customer or its property in courts of any other jurisdiction. Customer waives any bond or surety or security upon such bond or surety that might, but for this waiver, be required of Bank. Due to the complexity, high cost and time involved in commercial litigation before a jury, Customer and Bank each knowingly, voluntarily, irrevocably, and after the opportunity to consult with respective counsel, without coercion, waives any and all rights to trial by jury of any disputes between them and further waives any right to consolidate, by counterclaim or otherwise, any action or proceeding concerning any dispute between them with any other action or proceeding in which there is a trial by jury or in which a jury trial cannot be or has not been waived. Nothing herein shall affect Bank's right before, during or after commencing proceedings for court enforcement of its rights hereunder to exercise self-help remedies, such as repossession or set-off under the Uniform Commercial Code or other applicable law, convention or treaty, including Bank's right to bring an action in any court of competent jurisdiction for the purpose of enforcing any self-help remedies. This Agreement, together with each Note and Bank's interests in the Collateral, shall be governed in all respects by the laws of the State of Indiana (without regard to conflict of law principles).

12. Any notice or other communication given under this Agreement must be in writing and be delivered to the recipient party. Notices to Customer shall be delivered personally, sent via fax, or mailed (by regular first class mail, or certified or registered mail, or by recognized overnight courier), postage prepaid to Customer at its address or fax number shown at the beginning of this Agreement. Notices to Bank shall be delivered personally or mailed (by regular first class mail, or certified or registered mail, or by recognized overnight courier), postage prepaid to Bank's address for notices: P. O. Box 783, South Bend, IN 46624 for mail, 100 North Michigan Street, South Bend, IN 46601 for overnight courier, in either case to the attention of Credit Notice Desk. The parties may give notice to designate a different address for notices to the party.

13. In addition to notices or other formal communications given under this Agreement, Customer authorizes Bank to send communications to it via fax or regular email from time to time. Although email generally is an efficient and effective means of communicating, it is not a secure means of communication. Customer acknowledges that there is risk of improper interception of sensitive, confidential or proprietary information when that information is transmitted via regular email. To mitigate such risk, Bank offers to encrypt information it sends to Customer via email or to communicate such information by secure fax or overnight delivery. Because these more secure means of transmitting information are not as convenient as regular email. Customer prefers to accept those risks rather than pursue less convenient means of communication. Accordingly, Customer (i) acknowledges its acceptance of the risks associated with regular email transmission of confidential information, and (ii) releases Bank from any claim for losses or damages as a consequence of improper interception of confidential information while in route to or from Customer via regular email.

14. A fax or other electronic reproduction of this page or any other Note, document, schedule, exhibit or attachment to this Agreement executed in connection with this Agreement with the signature of either party to this Agreement shall be as effective and valid as if such page bore the original signature of such party. This Agreement may be executed and delivered in counterparts and via fax or other electronic means. Customer acknowledges that Customer has received and retained a completed copy of this Agreement and any UCC financing statement filed or to be filed in respect of the Collateral. Customer confirms that if it has received copies of documents for execution from Bank via any means of electronic delivery (including email), that it has made no changes to such documents and the documents are identical in content to the version dispatched by Bank to Customer.

15. This Agreement shall be deemed accepted by Bank in South Bend, Indiana, by the Bank's act of funding the first loan made under this Agreement.

Executed by Customer on __October 26__, 2010.

**1st SOURCE BANK**

By: _Madeline Beggs_
Name: _Madeline I. Beggs_
Title: _Assistant Portfolio Mgr._

**CUSTOMER:**

A.G. DILLARD, INC.

By: _Alan M. Dillard Jr_
Name: _Alan G. Dillard JR_
Title: _President_

# EXHIBIT B



*App No: 5148838*

## PROMISSORY NOTE – Term

| | |
|---|---|
| *Customer hereby irrevocably instructs Bank to disburse the Loan proceeds as follows, or as otherwise specified by Customer:*<br><br>$174,654.00 to Allegheny Ford Truck Sales Co. | Amount Advanced:    $174,654.00<br><br>Fees:    $400.00<br><br>Total Amount of Loan:  $175,054.00 |
| **Payment Type**<br><br>**Fixed Payment-Principal & Interest**<br>59 monthly payments of $2,655.26, which consists of principal and interest on the entire principal balance at the Interest Rate, commencing on the First Payment Due Date and then on the same day of each succeeding month, plus 1 final payment on the Loan Due Date of the outstanding balance including principal, interest, and any other unpaid monetary obligations of Customer to Bank. | **Interest Rate**<br><br>Fixed Rate: 5.19% per annum. |
| First Payment Due Date:  **5-30** , 2018<br><br>Loan Due Date:  **4-30** , 2023 | **Comments:**<br>The final payment due on the Loan Due Date will be $47,788.99 plus interest, and plus or minus the effect of the prepayments of late fees (if any) on this Note, the timing of receipt of monthly payments by Bank, and any other fees or expenses due and payable under this Note. |

1.  This Promissory Note ("Note") is executed and delivered pursuant to the Loan and Security Agreement dated October 18, 2010 ("Agreement") between A. G. DILLARD, INC. ("Customer") and 1st Source Bank ("Bank"). This Note memorializes a "Loan" as defined in and made under the Agreement. All terms that are capitalized in this Note which are not otherwise defined in this Note shall have the meanings ascribed in the Agreement. This Note is secured by, and subject in all respects to, the terms and conditions contained in the Agreement, all of which are incorporated by reference into this Note. These terms and conditions cover, among other things, events and circumstances that constitute a default by Customer, and Bank's rights and remedies in respect of a Customer default. This Note is secured by Collateral as provided in the Agreement, and in particular by the Collateral described in the specific Collateral Schedule attached to this Note.

2.  Customer promises to pay to Bank or to Bank's order, at such office as Bank may direct, the unpaid principal balance of this Note and all other sums which become due under the Loan Agreement, with interest commencing on the Loan Funding Date at the Interest Rate per annum specified herein, according to the Payment Schedule described above. The entire balance due under this Note is due and payable in full on the Loan Due Date.

3.  This is a "term" loan, and is not a revolving credit arrangement. Customer has no right to receive a re-advance in the future of loan proceeds due to payments or other principal reductions in this Note. If the Total Amount of Loan shown above is not fully disbursed at the Loan Funding Date, then Bank reserves the right to decline to make any further disbursement after 180 days from the Loan Funding Date or if a default (as defined in the Agreement) exists. If Bank makes any further disbursements, then, for each disbursement, Bank may recompute the amortization and repayment schedules and notify Customer of the recomputed payment schedule.

4.  Customer may prepay the entire unpaid principal balance of the Loan applicable to any item or items of Equipment at any time. Any prepayment of principal that is a direct result of Customer selling or otherwise disposing, other than to an affiliated company, of the item(s) in the ordinary course of Customer's business to which Bank has consented ("ordinary course prepayments") shall not be subject to any early breakage fee. If Customer makes a prepayment other than an ordinary course prepayment (including a payment of principal due after acceleration of the Loan following default), Customer shall also pay Bank an early breakage fee to compensate Bank for actual and potential loss of return on prepaid amounts and for costs associated with processing prepayments. The early breakage fee shall be equal to one percent (1%) per annum of the amount prepaid for each year (and for any partial year, which shall be rounded up to a whole year) remaining in the scheduled term of the Loan, measured from the date of prepayment. Partial prepayments shall be applied against payment installment obligations in inverse order of maturity unless the Bank agrees in its sole discretion to recalculate the required installment payments by spreading the remaining unpaid principal balance over the remaining term of the Loan resulting in a recast schedule of installment payments having due regard for the interest specified for the Loan. If so, Bank will notify Customer of the recast schedule.

Executed by Customer on **April 24** , 2018.

**A. G. DILLARD, INC.**

By  _____
Alan G. Dillard, III, President

**BANK USE ONLY:**
Loan Funding Date:  **4-30** , 2018



## SCHEDULE "A"

This Schedule A becomes a part of the Loan and Security Agreement dated October 18, 2010 ("Agreement") between A. G. DILLARD, INC. ("Customer") and 1st Source Bank ("Bank") by Customer's act of requesting funding and Bank's act of advancing funds in respect of the property described below, which property shall be included as "Equipment" in the "Collateral" (as defined in the Agreement).

1.  The equipment listed below is included as Equipment:

    2018 Kenworth T370 Mechanics Truck s/n 2NKHHJ7XXKM245767 with Tool Body and Crane

2.  The Equipment shall be used primarily for business or commercial use other than farming.

3.  Customer will not sell, lease or transfer ownership or possession of any of the Equipment to another person without Bank's prior written consent.

4.  Customer confirms and agrees that (check applicable box):

    ☐ Customer has inspected and accepted the Equipment as satisfactory in all respects

    ☒ Delivery of the Equipment is pending, and currently scheduled for   4/27/18

5.  Note: If the Equipment is subject to a certificate of title statute, Customer is responsible for applying for certificates of title with Bank's lien noted thereon within ten (10) days from the date these units are financed by Bank.

---

BANK USE ONLY

Loan Funding Date: 4-30, 2018                                          APPROVAL/INITIALS

---

# EXHIBIT C



*Account No. 992210081199*

## AMENDMENT AGREEMENT

**Document Date:** July 3, 2018

| Customer (Exact Legal Name): A. G. DILLARD, INC. | | |
|---|---|---|
| Address: | 295 Memory Lane | |
| City/State/Zip Code: | Troy, VA 22974 | |
| Phone: (434) 977-3750 | Fax: | Email: |

1.  1st Source Bank ("Bank") and Customer are currently parties to a Loan and Security Agreement dated October 18, 2010 (the "Agreement"), under which Customer has delivered a certain Promissory Note – Term, dated May 29, 2018 (the "Note") with accompanying Schedule A (the "Equipment Schedule").

2.  Bank and Customer hereby amend the Note as follows:

    a.  The Comments section will be deleted in its entirety and the following inserted in lieu therof:

    The final payment due on the Loan Due Date will be $100,301.27 plus interest, and plus or minus the effect of the prepayments or late fees (if any) on this Note, the timing of receipt of monthly payments by Bank, and any other fees or expenses due and payable under this Note.

3.  Except for the specific amendment made hereby, the Agreement, the Note, and the Equipment Schedule and all other documents and agreements executed in connection therewith are hereby confirmed in all respects, and all terms and conditions therein shall remain in full force and effect.

4.  A fax or other electronic reproduction of this document with the signature of either party shall be as effective and valid as if such page bore the original signature of such party. This document may be executed and delivered in counterpart, and via fax or other electronic media. Customer confirms that if it has received copies of documents for execution from Bank via any means of electronic delivery (including email), that it has made no changes to such documents and the documents are identical in content to the version dispatched by Bank to Customer.

Executed on _____7/25/18_____, 2018

Effective as of ____7/25/18_____, 2018

**A. G. DILLARD, INC.**

By: _____
    Alan G. Dillard, III, President

**1st SOURCE BANK**

By: _____
    Thomas Dell, Supervisor, Loan Services



*App No. 5245397*

## PROMISSORY NOTE – Term

| Customer hereby irrevocably instructs Bank to disburse the Loan proceeds as follows, or as otherwise specified by Customer: | Amount Advanced: | $364,260.00 |
|---|---|---|
| | Fees: | $400.00 |
| $364,260.00 to Truck Enterprises, Inc. | Total Amount of Loan: | $364,660.00 |

| Payment Type | Interest Rate |
|---|---|
| **Fixed Payment-Principal & Interest:** 59 monthly payments of $5,531.58, which consists of principal and interest on the entire principal balance at the Interest Rate, commencing on the First Payment Due Date and then on the same day of each succeeding month, plus 1 final payment on the Loan Due Date of the outstanding balance including principal, interest, and any other unpaid monetary obligations of Customer to Bank. | Fixed Rate: 5.19% per annum. |

| First Payment Due Date: 8-03 , 2018 | Comments: |
|---|---|
| Loan Due Date: 7-03 , 2023 | The final payment due on the Loan Due Date will be $100,574.85 plus interest, and plus or minus the effect of the prepayments or late fees (if any) on this Note, the timing of receipt of monthly payments by Bank, and any other fees or expenses due and payable under this Note. |

1. This Promissory Note ("Note") is executed and delivered pursuant to the Loan and Security Agreement dated October 18, 2010 ("Agreement") between A. G. DILLARD, INC. ("Customer") and 1st Source Bank ("Bank"). This Note memorializes a "loan" as defined in and made under the Agreement. All terms that are capitalized in this Note which are not otherwise defined in this Note shall have the meanings ascribed in the Agreement. This Note is secured by, and subject in all respects to, the terms and conditions contained in the Agreement, all of which are incorporated by reference into this Note. These terms and conditions cover, among other things, events and circumstances that constitute a default by Customer, and Bank's rights and remedies in respect of a Customer default. This Note is secured by Collateral as provided in the Agreement, and in particular by the Collateral described in the specific Collateral Schedule attached to this Note.

2. Customer promises to pay to Bank or to Bank's order, at such office as Bank may direct, the unpaid principal balance of this Note and all other sums which become due under the Loan Agreement, with interest commencing on the Loan Funding Date at the Interest Rate per annum specified herein, according to the Payment Schedule described above. The entire balance due under this Note is due and payable in full on the Loan Due Date.

3. This is a "term" loan, and is not a revolving credit arrangement. Customer has no right to receive a re-advance in the future of loan proceeds due to payments or other principal reductions in this Note. If the Total Amount of Loan shown above is not fully disbursed at the Loan Funding Date, then Bank reserves the right to decline to make any further disbursement after 180 days from the Loan Funding Date or if a default (as defined in the Agreement) exists. If Bank makes any further disbursements, then, for each disbursement, Bank may recompute the amortization and repayment schedules and notify Customer of the recomputed payment schedule.

4. Customer may prepay the entire unpaid principal balance of the Loan applicable to any item or items of Equipment at any time. Any prepayment of principal that is a direct result of Customer selling or otherwise disposing, other than to an affiliated company, of the item(s) in the ordinary course of Customer's business to which Bank has consented ("ordinary course prepayments") shall not be subject to any early breakage fee. If Customer makes a prepayment other than an ordinary course prepayment (including a payment of principal due after acceleration of the Loan following default), Customer shall also pay Bank an early breakage fee to compensate Bank for actual and potential loss of return on prepaid amounts and for costs associated with processing prepayments. The early breakage fee shall be equal to one percent (1%) per annum of the amount prepaid for each year (and for any partial year, which shall be rounded up to a whole year) remaining in the scheduled term of the Loan, measured from the date of prepayment. Partial prepayments shall be applied against payment installment obligations in inverse order of maturity unless the Bank agrees in its sole discretion to recalculate the required installment payments by spreading the remaining unpaid principal balance over the remaining term of the Loan resulting in a recast schedule of installment payments having due regard for the interest specified for the Loan. If so, Bank will notify Customer of the recast schedule.

Executed by Customer on _May 29th_, 2018.

A. G. DILLARD, INC.

By: _____
Alan G. Dillard, III, President

**BANK USE ONLY:**
Loan Funding Date: 7-03 , 2018



*Retail/Owner/Operator*
*App No. 5245397*

## SCHEDULE "A"

This Schedule A becomes a part of the Loan and Security Agreement dated October 18, 2010 ("Agreement") between A. G. DILLARD, INC. ("Customer") and 1st Source Bank ("Bank") by Customer's act of requesting funding and Bank's act of advancing funds in respect of the property described below, which property shall be included as "Equipment" in the "Collateral" (as defined in the Agreement).

1.    The equipment listed below is included as Equipment:

   2019 Kenworth T880 Truck s/n 1NKZXP0X3KJ251048
   2019 Kenworth T880 Truck s/n 1NKZXP0X5KJ251049

2.    The Equipment shall be used primarily for business or commercial use other than farming.

3.    Customer will not sell, lease or transfer ownership or possession of any of the Equipment to another person without Bank's prior written consent.

4.    Customer confirms and agrees that (check applicable box):

   ☐ Customer has inspected and accepted the Equipment as satisfactory in all respects

   ☒ Delivery of the Equipment is pending, and currently scheduled for _June 7 2018_

5.    **Note: If the Equipment is subject to a certificate of title statute, Customer is responsible for applying for certificates of title with Bank's lien noted thereon within ten (10) days from the date these units are financed by Bank.**

---

*BANK USE ONLY*

Loan Funding Date: _7-03_ , 2018

APPROVAL/INITIALS
_T.O._

# EXHIBIT D


**Source·**
**Bank**

*App No. 5322915*

## PROMISSORY NOTE – Term

| | |
|---|---|
| *Customer hereby irrevocably instructs Bank to disburse the Loan proceeds as follows, or as otherwise specified by Customer:*<br><br>$176,249.00 to A. G. Dillard, Inc. | Amount Advanced:    $176,249.00<br><br>Fees:    $400.00<br><br>Total Amount of Loan: $176,649.00 |
| **Payment Type**<br><br>**Fixed Payment-Principal & Interest:**<br>    59 monthly payments of $2,683.63, which consists of principal and interest on the entire principal balance at the Interest Rate, commencing on the First Payment Due Date and then on the same day of each succeeding month, plus 1 final payment on the Loan Due Date of the outstanding balance including principal, interest, and any other unpaid monetary obligations of Customer to Bank. | **Interest Rate**<br><br>    Fixed Rate: 5.24% per annum. |
| First Payment Due Date:    *8 - 1*, 2018<br><br>Loan Due Date:    *7 - 1*, 2023 | Comments:<br><br>The final payment due on the Loan Due Date will be $48,841.59 plus interest, and plus or minus the effect of the prepayments or late fees (if any) on this Note, the timing of receipt of monthly payments by Bank, and any other fees or expenses due and payable under this Note. |

1.    This Promissory Note ("Note") is executed and delivered pursuant to the Loan and Security Agreement dated October 18, 2010 ("Agreement") between A. G. DILLARD, INC. ("Customer") and 1st Source Bank ("Bank"). This Note memorializes a "loan" as defined in and made under the Agreement. All terms that are capitalized in this Note which are not otherwise defined in this Note shall have the meanings ascribed in the Agreement. This Note is secured by, and subject in all respects to, the terms and conditions contained in the Agreement, all of which are incorporated by reference into this Note. These terms and conditions cover, among other things, events and circumstances that constitute a default by Customer, and Bank's rights and remedies in respect of a Customer default. This Note is secured by Collateral as provided in the Agreement, and in particular by the Collateral described in the specific Collateral Schedule attached to this Note.

2.    Customer promises to pay to Bank or to Bank's order, at such office as Bank may direct, the unpaid principal balance of this Note and all other sums which become due under the Loan Agreement, with interest commencing on the Loan Funding Date at the Interest Rate per annum specified herein, according to the Payment Schedule described above. The entire balance due under this Note is due and payable in full on the Loan Due Date.

3.    This is a "term" loan, and is not a revolving credit arrangement. Customer has no right to receive a re-advance in the future of loan proceeds due to payments or other principal reductions in this Note. If the Total Amount of Loan shown above is not fully disbursed at the Loan Funding Date, then Bank reserves the right to decline to make any further disbursement after 180 days from the Loan Funding Date or if a default (as defined in the Agreement) exists. If Bank makes any further disbursements, then, for each disbursement, Bank may recompute the amortization and repayment schedules and notify Customer of the recomputed payment schedule.

4.    Customer may prepay the entire unpaid principal balance of the Loan applicable to any item or items of Equipment at any time. Any prepayment of principal that is a direct result of Customer selling or otherwise disposing, other than to an affiliated company, the item(s) in the ordinary course of Customer's business to which Bank has consented ("ordinary course prepayments") shall not be subject to any early breakage fee. If Customer makes a prepayment other than an ordinary course prepayment (including a payment of principal due after acceleration of the Loan following default), Customer shall also pay Bank an early breakage fee to compensate Bank for actual and potential loss of return on prepaid amounts and for costs associated with processing prepayments. The early breakage fee shall be equal to one percent (1%) per annum of the amount prepaid for each year (and for any partial year, which shall be rounded up to a whole year) remaining in the scheduled term of the Loan, measured from the date of prepayment. Partial prepayments shall be applied against payment installment obligations in inverse order of maturity unless the Bank agrees in its sole discretion to recalculate the required installment payments by spreading the remaining unpaid principal balance over the remaining term of the Loan resulting in a recast schedule of installment payments having due regard for the interest specified for the Loan. If so, Bank will notify Customer of the recast schedule.

Executed by Customer on *June 27*, 2018.

**A. G. DILLARD, INC.**

By:    _____
       Alan G. Dillard, III, President

**BANK USE ONLY:**
Loan Funding Date: _____ *6-28* _____, 2018



# SCHEDULE "A"

This Schedule A becomes a part of the Loan and Security Agreement dated October 18, 2010 ("Agreement") between A. G. DILLARD, INC. ("Customer") and 1st Source Bank ("Bank") by Customer's act of requesting funding and Bank's act of advancing funds in respect of the property described below, which property shall be included as "Equipment" in the "Collateral" (as defined in the Agreement).

1.    The equipment listed below is included as Equipment:

      2018 Kenworth T370 Fuel/Lube Truck s/n 2NKHHJ7X9JM224925

2.    The Equipment shall be used primarily for business or commercial use other than farming.

3.    Customer will not sell, lease or transfer ownership or possession of any of the Equipment to another person without Bank's prior written consent.

4.    Customer confirms and agrees that (check applicable box):

      ☒ Customer has inspected and accepted the Equipment as satisfactory in all respects

      ☐ Delivery of the Equipment is pending, and currently scheduled for _____

5.    **Note: If the Equipment is subject to a certificate of title statute, Customer is responsible for applying for certificates of title with Bank's lien noted thereon within ten (10) days from the date these units are financed by Bank.**

---

*BANK USE ONLY*

Loan Funding Date: _____6-28_____ , 2018                                   APPROVAL INITIALS _____

---

# EXHIBIT E

**Source Bank**

*App No. 5477512*

## PROMISSORY NOTE – Term

| | |
|---|---|
| *Customer hereby irrevocably instructs Bank to disburse the Loan proceeds as follows, or as otherwise specified by Customer:*<br><br>$176,624.00 to Allegheny Ford Truck Sales Co. | Amount Advanced:    $176,624.00<br><br>Fees:    $400.00<br><br>**Total Amount of Loan: $177,024.00** |
| **Payment Type**<br><br>**Fixed Payment-Principal & Interest:**<br>59 monthly payments of $2,689.07, which consists of principal and interest on the entire principal balance at the Interest Rate, commencing on the First Payment Due Date and then on the same day of each succeeding month, plus 1 final payment on the Loan Due Date of the outstanding balance including principal, interest, and any other unpaid monetary obligations of Customer to Bank. | **Interest Rate**<br><br>Fixed Rate: 5.24% per annum. |
| **First Payment Due Date:** _10-7_, 2018<br><br>**Loan Due Date:** _9-7_, 2023 | **Comments:**<br>The final payment due on the Loan Due Date will be $48,892.07 plus interest, and plus or minus the effect of the prepayments or late fees (if any) on this Note, the timing of receipt of monthly payments by Bank, and any other fees or expenses due and payable under this Note. |

1.  This Promissory Note ("Note") is executed and delivered pursuant to the Loan and Security Agreement dated October 18, 2010 ("Agreement") between A. G. DILLARD, INC. ("Customer") and 1st Source Bank ("Bank"). This Note memorializes a "loan" as defined in and made under the Agreement. All terms that are capitalized in this Note which are not otherwise defined in this Note shall have the meanings ascribed in the Agreement. This Note is secured by, and subject in all respects to, the terms and conditions contained in the Agreement, all of which are incorporated by reference into this Note. These terms and conditions cover, among other things, events and circumstances that constitute a default by Customer, and Bank's rights and remedies in respect of a Customer default. This Note is secured by Collateral as provided in the Agreement, and in particular by the Collateral described in the specific Collateral Schedule attached to this Note.

2.  Customer promises to pay to Bank or to Bank's order, at such office as Bank may direct, the unpaid principal balance of this Note and all other sums which become due under the Loan Agreement, with interest commencing on the Loan Funding Date at the Interest Rate per annum specified herein, according to the Payment Schedule described above. The entire balance due under this Note is due and payable in full on the Loan Due Date.

3.  This is a "term" loan, and is not a revolving credit arrangement. Customer has no right to receive a re-advance in the future of loan proceeds due to payments or other principal reductions in this Note. If the Total Amount of Loan shown above is not fully disbursed at the Loan Funding Date, then Bank reserves the right to decline to make any further disbursement after 180 days from the Loan Funding Date or if a default (as defined in the Agreement) exists. If Bank makes any further disbursements, then, for each disbursement, Bank may recompute the amortization and repayment schedules and notify Customer of the recomputed payment schedule.

4.  Customer may prepay the entire unpaid principal balance of the Loan applicable to any item or items of Equipment at any time. Any prepayment of principal that is a direct result of Customer selling or otherwise disposing, other than to an affiliated company, of the item(s) in the ordinary course of Customer's business to which Bank has consented ("ordinary course prepayments") shall not be subject to any early breakage fee. If Customer makes a prepayment other than an ordinary course prepayment (including a payment of principal due after acceleration of the Loan following default), Customer shall also pay Bank an early breakage fee to compensate Bank for actual and potential loss of return on prepaid amounts and for costs associated with processing prepayments. The early breakage fee shall be equal to one percent (1%) per annum of the amount prepaid for each year (and for any partial year, which shall be rounded up to a whole year) remaining in the scheduled term of the Loan, measured from the date of prepayment. Partial prepayments shall be applied against payment installment obligations in inverse order of maturity unless the Bank agrees in its sole discretion to recalculate the required installment payments by spreading the remaining unpaid principal balance over the remaining term of the Loan resulting in a recast schedule of installment payments having due regard for the interest specified for the Loan. If so, Bank will notify Customer of the recast schedule.

Executed by Customer on _9/5/18_, 2018.

A. G. DILLARD, INC.

By: _____
    Alan G. Dillard, III, President

**BANK TO COMPLETE:**
Loan Funding Date: _9-7_, 2018



# SCHEDULE "A"

This Schedule A becomes a part of the Loan and Security Agreement dated October 18, 2010 ("Agreement") between A. G. DILLARD, INC. ("Customer") and 1st Source Bank ("Bank") by Customer's act of requesting funding and Bank's act of advancing funds in respect of the property described below, which property shall be included as "Equipment" in the "Collateral" (as defined in the Agreement).

1.  The equipment listed below is included as Equipment:

    2019 Kenworth T370 Mechanic's Truck s/n 2NKHHJ7X6KM258936

2.  The Equipment shall be used primarily for business or commercial use other than farming.

3.  Customer will not sell, lease or transfer ownership or possession of any of the Equipment to another person without Bank's prior written consent.

4.  Customer confirms and agrees that (check applicable box):

    ☐ Customer has inspected and accepted the Equipment as satisfactory in all respects.

    ☒ Delivery of the Equipment is pending, and currently scheduled for _9/7/18_

5.  **Note: If the Equipment is subject to a certificate of title statute, Customer is responsible for applying for certificates of title with Bank's lien noted thereon within ten (10) days from the date these units are financed by Bank.**

---

*BANK TO COMPLETE*

Loan Funding Date: ___9-7___, 2018                                    APPROVAL INITIALS _____

---

# EXHIBIT F

**1st Source Bank**

*App No. 5490030*

# PROMISSORY NOTE – Term

| *Customer hereby irrevocably instructs Bank to disburse the Loan proceeds as follows, or as otherwise specified by Customer:* | Amount Advanced: | $71,970.00 |
|---|---|---|
| | Fees: | $400.00 |
| | Total Amount of Loan: | $72,370.00 |
| $71,970.00 to Truck Enterprises, Inc. | | |

| Payment Type | Interest Rate |
|---|---|
| **Fixed Payment-Principal & Interest:**<br>59 monthly payments of $1,379.87, which consists of principal and interest on the entire principal balance at the Interest Rate, commencing on the First Payment Due Date and then on the same day of each succeeding month, plus 1 final payment on the Loan Due Date of the outstanding balance including principal, interest, and any other unpaid monetary obligations of Customer to Bank. | Fixed Rate: 5.35% per annum. |

| First Payment Due Date: *10-13*, 2018 | Comments: |
|---|---|
| Loan Due Date: *9-13*, 2023 | |

1. This Promissory Note ("Note") is executed and delivered pursuant to the Loan and Security Agreement dated October 18, 2010 ("Agreement") between A. G. DILLARD, INC. ("Customer") and 1st Source Bank ("Bank"). This Note memorializes a "loan" as defined in and made under the Agreement. All terms that are capitalized in this Note which are not otherwise defined in this Note shall have the meanings ascribed in the Agreement. This Note is secured by, and subject in all respects to, the terms and conditions contained in the Agreement, all of which are incorporated by reference into this Note. These terms and conditions cover, among other things, events and circumstances that constitute a default by Customer, and Bank's rights and remedies in respect of a Customer default. This Note is secured by Collateral as provided in the Agreement, and in particular by the Collateral described in the specific Collateral Schedule attached to this Note.

2. Customer promises to pay to Bank or to Bank's order, at such office as Bank may direct, the unpaid principal balance of this Note and all other sums which become due under the Loan Agreement, with interest commencing on the Loan Funding Date at the Interest Rate per annum specified herein, according to the Payment Schedule described above. The entire balance due under this Note is due and payable in full on the Loan Due Date.

3. This is a "term" loan, and is not a revolving credit arrangement. Customer has no right to receive a re-advance in the future of loan proceeds due to payments or other principal reductions in this Note. If the Total Amount of Loan shown above is not fully disbursed at the Loan Funding Date, then Bank reserves the right to decline to make any further disbursement after 180 days from the Loan Funding Date or if a default (as defined in the Agreement) exists. If Bank makes any further disbursements, then, for each disbursement, Bank may recompute the amortization and repayment schedules and notify Customer of the recomputed payment schedule.

4. Customer may prepay the entire unpaid principal balance of the Loan applicable to any item or items of Equipment at any time. Any prepayment of principal that is a direct result of Customer selling or otherwise disposing, other than to an affiliated company, of the item(s) in the ordinary course of Customer's business to which Bank has consented ("ordinary course prepayments") shall not be subject to any early breakage fee. If Customer makes a prepayment other than an ordinary course prepayment (including a payment of principal due after acceleration of the Loan following default), Customer shall also pay Bank an early breakage fee to compensate Bank for actual and potential loss of return on prepaid amounts and for costs associated with processing prepayments. The early breakage fee shall be equal to one percent (1%) per annum of the amount prepaid for each year (and for any partial year, which shall be rounded up to a whole year) remaining in the scheduled term of the Loan, measured from the date of prepayment. Partial prepayments shall be applied against payment installment obligations in inverse order of maturity unless the Bank agrees in its sole discretion to recalculate the required installment payments by spreading the remaining unpaid principal balance over the remaining term of the Loan resulting in a recast schedule of installment payments having due regard for the interest specified for the Loan. If so, Bank will notify Customer of the recast schedule.

Executed by Customer on *9/12/18*, 2018.

**A. G. DILLARD, INC.**

By: _____
Alan G. Dillard, III, President

**BANK TO COMPLETE:**
Loan Funding Date: *9-13*, 2018


**Source Bank**

## SCHEDULE "A"

This Schedule A becomes a part of the Loan and Security Agreement dated October 18, 2010 ("Agreement") between A. G. DILLARD, INC. ("Customer") and 1st Source Bank ("Bank") by Customer's act of requesting funding and Bank's act of advancing funds in respect of the property described below, which property shall be included as "Equipment" in the "Collateral" (as defined in the Agreement).

1.   The equipment listed below is included as Equipment:

   2019 Rhodes Warrior (32') Dump Trailer s/n 1A9SD3236KP432903

2.   The Equipment shall be used primarily for business or commercial use other than farming.

3.   Customer will not sell, lease or transfer ownership or possession of any of the Equipment to another person without Bank's prior written consent.

4.   Customer confirms and agrees that (check applicable box):

   ☒  Customer has inspected and accepted the Equipment as satisfactory in all respects

   ☐  Delivery of the Equipment is pending, and currently scheduled for _____

5.   Note: If the Equipment is subject to a certificate of title statute, Customer is responsible for applying for certificates of title with Bank's lien noted thereon within ten (10) days from the date these units are financed by Bank.

---

*BANK TO COMPLETE*

Loan Funding Date: __9 - 13__ , 2018                              APPROVAL INITIALS

---

# EXHIBIT G

**1st Source Bank**

*App No. 5650598*

## PROMISSORY NOTE – Term

| | |
|---|---|
| *Customer hereby irrevocably instructs Bank to disburse the Loan proceeds as follows, or as otherwise specified by Customer:*<br><br>$557,343.40 to Carter Machinery Company, Inc. | Amount Advanced:   $557,343.40<br><br>Fees:   $400.00<br><br>**Total Amount of Loan: $557,743.40** |
| **Payment Type**<br><br>**Fixed Payment-Principal & Interest:**<br>59 monthly payments of $9,132.10, which consists of principal and interest on the entire principal balance at the Interest Rate, commencing on the First Payment Due Date and then on the same day of each succeeding month, plus 1 final payment on the Loan Due Date of the outstanding balance including principal, interest, and any other unpaid monetary obligations of Customer to Bank. | **Interest Rate**<br><br>Fixed Rate: 5.48% per annum. |
| **First Payment Due Date:** _1-13_, 2019<br><br>**Loan Due Date:** _12-13_, 2023 | **Comments:**<br>The final payment due on the Loan Due Date will be $114,954.48 plus interest, and plus or minus the effect of the prepayments or late fees (if any) on this Note, the timing of receipt of monthly payments by Bank, and any other fees or expenses due and payable under this Note. |

1. This Promissory Note ("Note") is executed and delivered pursuant to the Loan and Security Agreement dated October 18, 2010 ("Agreement") between A. G. DILLARD, INC. ("Customer") and 1st Source Bank ("Bank"). This Note memorializes a "loan" as defined in and made under the Agreement. All terms that are capitalized in this Note which are not otherwise defined in this Note shall have the meanings ascribed in the Agreement. This Note is secured by, and subject in all respects to, the terms and conditions contained in the Agreement, all of which are incorporated by reference into this Note. These terms and conditions cover, among other things, events and circumstances that constitute a default by Customer, and Bank's rights and remedies in respect of a Customer default. This Note is secured by Collateral as provided in the Agreement, and in particular by the Collateral described in the specific Collateral Schedule attached to this Note.

2. Customer promises to pay to Bank or to Bank's order, at such office as Bank may direct, the unpaid principal balance of this Note and all other sums which become due under the Loan Agreement, with interest commencing on the Loan Funding Date at the Interest Rate per annum specified herein, according to the Payment Schedule described above. The entire balance due under this Note is due and payable in full on the Loan Due Date.

3. This is a "term" loan, and is not a revolving credit arrangement. Customer has no right to receive a re-advance in the future of loan proceeds due to payments or other principal reductions in this Note. If the Total Amount of Loan shown above is not fully disbursed at the Loan Funding Date, then Bank reserves the right to decline to make any further disbursement after 180 days from the Loan Funding Date or if a default (as defined in the Agreement) exists. If Bank makes any further disbursements, then, for each disbursement, Bank may recompute the amortization and repayment schedules and notify Customer of the recomputed payment schedule.

4. Customer may prepay the entire unpaid principal balance of the Loan applicable to any item or items of Equipment at any time. Any prepayment of principal that is a direct result of Customer selling or otherwise disposing, other than to an affiliated company, of the item(s) in the ordinary course of Customer's business to which Bank has consented ("ordinary course prepayments") shall not be subject to any early breakage fee. If Customer makes a prepayment other than an ordinary course prepayment (including a payment of principal due after acceleration of the Loan following default), Customer shall also pay Bank an early breakage fee to compensate Bank for actual and potential loss of return on prepaid amounts and for costs associated with processing prepayments. The early breakage fee shall be equal to one percent (1%) per annum of the amount prepaid for each year (and for any partial year, which shall be rounded up to a whole year) remaining in the scheduled term of the Loan, measured from the date of prepayment. Partial prepayments shall be applied against payment installment obligations in inverse order of maturity unless the Bank agrees in its sole discretion to recalculate the required installment payments by spreading the remaining unpaid principal balance over the remaining term of the Loan resulting in a recast schedule of installment payments having due regard for the interest specified for the Loan. If so, Bank will notify Customer of the recast schedule.

Executed by Customer on _12/11/18_ .

**A. G. DILLARD, INC.**

By: _[signature]_
       Alan G. Dillard, III, President

**BANK TO COMPLETE:** _12-13-18_
Loan Funding Date: _____

 **Source.**
**1st Bank**

*Retail/Owner/Operator*
*App No. 5650598*

## SCHEDULE "A"

This Schedule A becomes a part of the Loan and Security Agreement dated October 18, 2010 ("Agreement") between A. G. DILLARD, INC. ("Customer") and 1st Source Bank ("Bank") by Customer's act of requesting funding and Bank's act of advancing funds in respect of the property described below, which property shall be included as "Equipment" in the "Collateral" (as defined in the Agreement).

1.  The equipment listed below is included as Equipment:

    Gomaco GT-3300 Concrete Curb Machine s/n 903100-357/3300 with Sitech SPS930 GPS System and 4 Stations

2.  The Equipment shall be used primarily for business or commercial use other than farming.

3.  Customer will not sell, lease or transfer ownership or possession of any of the Equipment to another person without Bank's prior written consent.

4.  Customer confirms and agrees that (check applicable box)

    ☒ Customer has inspected and accepted the Equipment as satisfactory in all respects

    ☐ Delivery of the Equipment is pending, and currently scheduled for _____

5.  **Note: If the Equipment is subject to a certificate of title statute, Customer is responsible for applying for certificates of title with Bank's lien noted thereon within ten (10) days from the date these units are financed by Bank.**

---

*BANK TO COMPLETE*

Loan Funding Date: *12-13-18*

APPROVAL/INITIALS

---

# EXHIBIT H



**1st Source Bank**

*App No. 5993062*

## PROMISSORY NOTE – Term

| | |
|---|---|
| *Customer hereby irrevocably instructs Bank to disburse the Loan proceeds as follows, or as otherwise specified by Customer:*<br><br>$178,110.00 to Truck Enterprises, Inc. | Amount Advanced:   $178,110.00<br><br>Fees:   $250.00<br><br>Total Amount of Loan: $178,360.00 |
| **Payment Type**<br><br>**Fixed Payment-Principal & Interest:**<br>59 monthly payments of $2,724.83, which consists of principal and interest on the entire principal balance at the Interest Rate, commencing on the First Payment Due Date and then on the same day of each succeeding month, plus 1 final payment on the Loan Due Date of the outstanding balance including principal, interest, and any other unpaid monetary obligations of Customer to Bank. | **Interest Rate**<br><br>Fixed Rate: 5.07% per annum.<br><br>1063 |
| First Payment Due Date:  6-21 , 2019<br><br>Loan Due Date:  5-21 , 2024 | **Comments:**<br><br>The final payment due on the Loan Due Date will be $47,100.87 plus interest, and plus or minus the effect of the prepayments or late fees (if any) on this Note, the timing of receipt of monthly payments by Bank, and any other fees or expenses due and payable under this Note. |

1. This Promissory Note ("Note") is executed and delivered pursuant to the Loan and Security Agreement dated October 18, 2010 ("Agreement") between A. G. DILLARD, INC. ("Customer") and 1st Source Bank ("Bank"). This Note memorializes a "loan" as defined in and made under the Agreement. All terms that are capitalized in this Note which are not otherwise defined in this Note shall have the meanings ascribed in the Agreement. This Note is secured by, and subject in all respects to, the terms and conditions contained in the Agreement, all of which are incorporated by reference into this Note. These terms and conditions cover, among other things, events and circumstances that constitute a default by Customer, and Bank's rights and remedies in respect of a Customer default. This Note is secured by Collateral as provided in the Agreement, and in particular by the Collateral described in the specific Collateral Schedule attached to this Note.

2. Customer promises to pay to Bank or to Bank's order, at such office as Bank may direct, the unpaid principal balance of this Note and all other sums which become due under the Loan Agreement, with interest commencing on the Loan Funding Date at the Interest Rate per annum specified herein, according to the Payment Schedule described above. The entire balance due under this Note is due and payable in full on the Loan Due Date.

3. This is a "term" loan, and is not a revolving credit arrangement. Customer has no right to receive a re-advance in the future of loan proceeds due to payments or other principal reductions in this Note. If the Total Amount of Loan shown above is not fully disbursed at the Loan Funding Date, then Bank reserves the right to decline to make any further disbursement after 180 days from the Loan Funding Date or if a default (as defined in the Agreement) exists. If Bank makes any further disbursements, then, for each disbursement, Bank may recompute the amortization and repayment schedules and notify Customer of the recomputed payment schedule.

4. Customer may prepay the entire unpaid principal balance of the Loan applicable to any item or items of Equipment at any time. Any prepayment of principal that is a direct result of Customer selling or otherwise disposing, other than to an affiliated company, of the item(s) in the ordinary course of Customer's business to which Bank has consented ("ordinary course prepayments") shall not be subject to any early breakage fee. If Customer makes a prepayment other than an ordinary course prepayment (including a payment of principal due after acceleration of the Loan following default), Customer shall also pay Bank an early breakage fee to compensate Bank for actual and potential loss of return on prepaid amounts and for costs associated with processing prepayments. The early breakage fee shall be equal to one percent (1%) per annum of the amount prepaid for each year (and for any partial year, which shall be rounded up to a whole year) remaining in the scheduled term of the Loan, measured from the date of prepayment. Partial prepayments shall be applied against payment installment obligations in inverse order of maturity unless the Bank agrees in its sole discretion to recalculate the required installment payments by spreading the remaining unpaid principal balance over the remaining term of the Loan resulting in a recast schedule of installment payments having due regard for the interest specified for the Loan. If so, Bank will notify Customer of the recast schedule.

Executed by Customer on   4/22/19 , 2019

**A. G. DILLARD, INC.**

By:  _[signature]_
Alan G. Dillard, III, President

**BANK TO COMPLETE:**
Loan Funding Date:   5-21 , 2019



Retail/Owner/Operator
*App No. 5993062*

## SCHEDULE "A"

This Schedule A becomes a part of the Loan and Security Agreement dated October 18, 2010 ("Agreement") between A. G. DILLARD, INC. ("Customer") and 1st Source Bank ("Bank") by Customer's act of requesting funding and Bank's act of advancing funds in respect of the property described below, which property shall be included as "Equipment" in the "Collateral" (as defined in the Agreement).

1.   The equipment listed below is included as Equipment:

     2020 Kenworth T880 Dump Truck vin 1NKZXP0XXLJ341525 with Rhodes 17' Steel Body

2.   The Equipment shall be used primarily for business or commercial use other than farming.

3.   Customer will not sell, lease or transfer ownership or possession of any of the Equipment to another person without Bank's prior written consent.

4.   Customer confirms and agrees that (check applicable box):

     ☒ Customer has inspected and accepted the Equipment as satisfactory in all respects

     ☒ Delivery of the Equipment is pending, and currently scheduled for _____ 5/7/19 _____

5.   **Note: If the Equipment is subject to a certificate of title statute, Customer is responsible for applying for certificates of title with Bank's lien noted thereon within ten (10) days from the date these units are financed by Bank.**

---

*BANK TO COMPLETE*

Loan Funding Date: _____ 5-21 _____, 2019                     APPROVAL INITIALS _____

---

# EXHIBIT I



*App No. 5993156*

# PROMISSORY NOTE – Term

| | |
|---|---|
| *Customer hereby irrevocably instructs Bank to disburse the Loan proceeds as follows, or as otherwise specified by Customer:* | Amount Advanced:   $178,110.00 |
| | Fees:                 $250.00 |
| | **Total Amount of Loan:** $178,360.00 |
| $178,110.00 to Truck Enterprises, Inc. | |

| Payment Type | Interest Rate |
|---|---|
| **Fixed Payment-Principal & Interest:**<br>59 monthly payments of $2,724.83, which consists of principal and interest on the entire principal balance at the Interest Rate, commencing on the First Payment Due Date and then on the same day of each succeeding month, plus 1 final payment on the Loan Due Date of the outstanding balance including principal, interest, and any other unpaid monetary obligations of Customer to Bank. | Fixed Rate: 5.07% per annum.<br><br>**1064** |

| | |
|---|---|
| **First Payment Due Date:** ___2 - 5___, 2019<br><br>**Loan Due Date:** ___6 - 5___, 2024 | **Comments:**<br>The final payment due on the Loan Due Date will be $47,100.87 plus interest, and plus or minus the effect of the prepayments or late fees (if any) on this Note, the timing of receipt of monthly payments by Bank, and any other fees or expenses due and payable under this Note. |

1.  This Promissory Note ("Note") is executed and delivered pursuant to the Loan and Security Agreement dated October 18, 2010 ("Agreement") between A. G. DILLARD, INC. ("Customer") and 1st Source Bank ("Bank"). This Note memorializes a "loan" as defined in and made under the Agreement. All terms that are capitalized in this Note which are not otherwise defined in this Note shall have the meanings ascribed in the Agreement. This Note is secured by, and subject in all respects to, the terms and conditions contained in the Agreement, all of which are incorporated by reference into this Note. These terms and conditions cover, among other things, events and circumstances that constitute a default by Customer, and Bank's rights and remedies in respect of a Customer default. This Note is secured by Collateral as provided in the Agreement, and in particular by the Collateral described in the specific Collateral Schedule attached to this Note.

2.  Customer promises to pay to Bank or to Bank's order, at such office as Bank may direct, the unpaid principal balance of this Note and all other sums which become due under the Loan Agreement, with interest commencing on the Interest Rate per annum specified herein, according to the Payment Schedule described above. The entire balance due under this Note is due and payable in full on the Loan Due Date.

3.  This is a "term" loan, and is not a revolving credit arrangement. Customer has no right to receive a re-advance in the future of loan proceeds due to payments or other principal reductions in this Note. If the Total Amount of Loan shown above is not fully disbursed at the Loan Funding Date, then Bank reserves the right to decline to make any further disbursement after 180 days from the Loan Funding Date or if a default (as defined in the Agreement) exists. If Bank makes any further disbursements, then, for each disbursement, Bank may recompute the amortization and repayment schedules and notify Customer of the recomputed payment schedule.

4.  Customer may prepay the entire unpaid principal balance of the Loan applicable to any item or items of Equipment at any time. Any prepayment of principal that is a direct result of Customer selling or otherwise disposing, other than to an affiliated company, of the item(s) in the ordinary course of Customer's business to which Bank has consented ("ordinary course prepayments") shall not be subject to any early breakage fee. If Customer makes a prepayment other than an ordinary course prepayment (including a payment of principal due after acceleration of the Loan following default), Customer shall also pay Bank an early breakage fee to compensate Bank for actual and potential loss of return on prepaid amounts and for costs associated with processing prepayments. The early breakage fee shall be equal to one percent (1%) per annum of the amount prepaid for each year (and for any partial year, which shall be rounded up to a whole year) remaining in the scheduled term of the Loan, measured from the date of prepayment. Partial prepayments shall be applied against payment installment obligations in inverse order of maturity unless the Bank agrees in its sole discretion to recalculate the required installment payments by spreading the remaining unpaid principal balance over the remaining term of the Loan resulting in a recast schedule of installment payments having due regard for the interest specified for the Loan. If so, Bank will notify Customer of the recast schedule.

Executed by Customer on ___4/23/19___, 2019

**A. G. DILLARD, INC.**

By: _____
    Alan G. Dillard, III, President

**BANK TO COMPLETE:**
Loan Funding Date: ___6 - 5___, 2019





## SCHEDULE "A"

This Schedule A becomes a part of the Loan and Security Agreement dated October 18, 2010 ("Agreement") between A. G. DILLARD, INC. ("Customer") and 1st Source Bank ("Bank") by Customer's act of requesting funding and Bank's act of advancing funds in respect of the property described below, which property shall be included as "Equipment" in the "Collateral" (as defined in the Agreement).

1.    The equipment listed below is included as Equipment:

   2020 Kenworth T880 Dump Truck vin 1NKZXP0X1LJ341526 with Rhodes 17' Steel Body

2.    The Equipment shall be used primarily for business or commercial use other than farming.

3.    Customer will not sell, lease or transfer ownership or possession of any of the Equipment to another person without Bank's prior written consent.

4.    Customer confirms and agrees that (check applicable box):

   ☒ Customer has inspected and accepted the Equipment as satisfactory in all respects

   ☒ Delivery of the Equipment is pending, and currently scheduled for __5/19/19__

5.    **Note: If the Equipment is subject to a certificate of title statute, Customer is responsible for applying for certificates of title with Bank's lien noted thereon within ten (10) days from the date these units are financed by Bank.**

---

**BANK TO COMPLETE**

Loan Funding Date: __6-5__, 2019

APPROVAL/INITIALS
__MB__

---

# EXHIBIT J





*Account No. 5992947*

## AMENDMENT AGREEMENT

**Document Date:** May 6, 2019

| | |
|---|---|
| **Customer (Exact Legal Name):** A. G. DILLARD, INC. | |
| **Address:** 295 Memory Lane | |
| **City/State/Zip Code:** Troy, VA 22974 | |
| **Phone:** (434) 977-3750 | **Fax:** | **Email:** |

1.  1st Source Bank ("Bank") and Customer are currently parties to a Loan and Security Agreement dated October 18, 2010 (the "Agreement"), under which Customer has delivered a certain Promissory Note – Term, dated April 23, 2019 (the "Note") with accompanying Schedule A (the "Equipment Schedule").

2.  Bank and Customer hereby amend the Agreement, Note and/or Equipment Schedule as follows:

    Comments shall be deleted in its entirety and replaced with the following:

    The final payment due on the Loan Due Date will be $47,119.27 plus interest, and plus or minus the effect of the prepayments or late fees (if any) on this Note, the timing of receipt of monthly payments by Bank, and any other fees or expenses due and payable under this Note.

3.  Except for the specific amendment made hereby, the Agreement, the Note, and the Equipment Schedule and all other documents and agreements executed in connection therewith are hereby confirmed in all respects, and all terms and conditions therein shall remain in full force and effect.

4.  A fax or other electronic reproduction of this document with the signature of either party shall be as effective and valid as if such page bore the original signature of such party. This document may be executed and delivered in counterpart, and via fax or other electronic media. Customer confirms that if it has received copies of documents for execution from Bank via any means of electronic delivery (including email), that it has made no changes to such documents and the documents are identical in content to the version dispatched by Bank to Customer.

Executed on ____5/6____ , 2019

Effective as of April 23, 2019

**A. G. DILLARD, INC.**

By: _____
   Alan G. Dillard, III, President

**1st SOURCE BANK**

By: _____
   Madeline I. Beggs, Senior Loan Services Specialist

 

*App No. 5992947*

# PROMISSORY NOTE – Term

| *Customer hereby irrevocably instructs Bank to disburse the Loan proceeds as follows, or as otherwise specified by Customer:*<br><br>$178,110.00 to Truck Enterprises, Inc. | Amount Advanced:  $178,110.00<br><br>Fees:  $250.00<br><br>Total Amount of Loan: $178,360.00 |
|---|---|
| **Payment Type**<br><br>**Fixed Payment-Principal & Interest:**<br>59 monthly payments of $2,724.83, which consists of principal and interest on the entire principal balance at the Interest Rate, commencing on the First Payment Due Date and then on the same day of each succeeding month, plus 1 final payment on the Loan Due Date of the outstanding balance including principal, interest, and any other unpaid monetary obligations of Customer to Bank | **Interest Rate**<br><br>Fixed Rate: 5.07% per annum.<br><br>**1062** |
| **First Payment Due Date:** 6-6, 2019<br><br>**Loan Due Date:** 5-6, 2024 | **Comments:**<br><br>The final payment due on the Loan Due Date will be $47,100.87 plus interest, and plus or minus the effect of the prepayments or late fees (if any) on this Note, the timing of receipt of monthly payments by Bank, and any other fees or expenses due and payable under this Note. |

1   This Promissory Note ("Note") is executed and delivered pursuant to the Loan and Security Agreement dated October 18, 2010 ("Agreement") between A. G. DILLARD, INC. ("Customer") and 1st Source Bank ("Bank"). This Note memorializes a "loan" as defined in and made under the Agreement. All terms that are capitalized in this Note which are not otherwise defined in this Note shall have the meanings ascribed in the Agreement. This Note is secured by, and subject in all respects to, the terms and conditions contained in the Agreement, all of which are incorporated by reference into this Note. These terms and conditions cover, among other things, events and circumstances that constitute a default by Customer, and Bank's rights and remedies in respect of a Customer default. This Note is secured by Collateral as provided in the Agreement, and in particular by the Collateral described in the specific Collateral Schedule attached to this Note.

2.   Customer promises to pay to Bank or to Bank's order, at such office as Bank may direct, the unpaid principal balance of this Note and all other sums which become due under the Loan Agreement, with interest commencing on the Loan Funding Date at the Interest Rate per annum specified herein, according to the Payment Schedule described above. The entire balance due under this Note is due and payable in full on the Loan Due Date.

3   This is a "term" loan, and is not a revolving credit arrangement. Customer has no right to receive a re-advance in the future of loan proceeds due to payments or other principal reductions in this Note. If the Total Amount of Loan shown above is not fully disbursed at the Loan Funding Date, then Bank reserves the right to decline to make any further disbursement after 180 days from the Loan Funding Date or if a default (as defined in the Agreement) exists. If Bank makes any further disbursements, then, for each disbursement, Bank may recompute the amortization and repayment schedules and notify Customer of the recomputed payment schedule.

4.   Customer may prepay the entire unpaid principal balance of the Loan applicable to any item or items of Equipment at any time. Any prepayment of principal that is a direct result of Customer selling or otherwise disposing, other than to an affiliated company, of the item(s) in the ordinary course of Customer's business to which Bank has consented ("ordinary course prepayments") shall not be subject to any early breakage fee. If Customer makes a prepayment other than an ordinary course prepayment (including a payment of principal due after acceleration of the Loan following default), Customer shall also pay Bank an early breakage fee to compensate Bank for actual and potential loss of return on prepaid amounts and for costs associated with processing prepayments. The early breakage fee shall be equal to one percent (1%) per annum of the amount prepaid for each year (and for any partial year, which shall be rounded up to a whole year) remaining in the scheduled term of the Loan, measured from the date of prepayment. Partial prepayments shall be applied against payment installment obligations in inverse order of maturity unless the Bank agrees in its sole discretion to recalculate the required installment payments by spreading the remaining unpaid principal balance over the remaining term of the Loan resulting in a recast schedule of installment payments having due regard for the interest specified for the Loan. If so, Bank will notify Customer of the recast schedule.

Executed by Customer on 4/23/19, 2019

**A. G. DILLARD, INC.**

By: _____
Alan G. Dillard, III, President

**BANK TO COMPLETE:**
Loan Funding Date: 5-6, 2019





## SCHEDULE "A"

This Schedule A becomes a part of the Loan and Security Agreement dated October 18, 2010 ("Agreement") between A. G. DILLARD, INC ("Customer") and 1st Source Bank ("Bank") by Customer's act of requesting funding and Bank's act of advancing funds in respect of the property described below, which property shall be included as "Equipment" in the "Collateral" (as defined in the Agreement).

1.   The equipment listed below is included as Equipment·

    2020 Kenworth T880 Dump Truck vin 1NKZXP0X8LJ341524 with Rhodes 17' Steel Body

2.   The Equipment shall be used primarily for business or commercial use other than farming.

3    Customer will not sell, lease or transfer ownership or possession of any of the Equipment to another person without Bank's prior written consent.

4    Customer confirms and agrees that (check applicable box):

    ☐ Customer has inspected and accepted the Equipment as satisfactory in all respects

    ☒ Delivery of the Equipment is pending, and currently scheduled for _4/3v4.9_

5.   **Note: If the Equipment is subject to a certificate of title statute, Customer is responsible for applying for certificates of title with Bank's lien noted thereon within ten (10) days from the date these units are financed by Bank.**

---

*BANK TO COMPLETE*

Loan Funding Date·  _5 - 6_ , 2019          APPROVAL INITIALS _____

---

# EXHIBIT K

**Source. Bank**

*App No. 6114104*

## PROMISSORY NOTE – Term

| | |
|---|---|
| *Customer hereby irrevocably instructs Bank to disburse the Loan proceeds as follows, or as otherwise specified by Customer:* | Amount Advanced:    $4,669,573.44 |
| | Fees:                $800.00 |
| | Total Amount of Loan: $4,670,373.44 |
| $4,669,573.44 to Caterpillar Financial Services Corporation | |
| **Payment Type**<br><br>    See Exhibit A | **Interest Rate**<br><br>    Fixed Rate: 4.9% per annum. |
| **First Payment Due Date:** ___7-21___ , 2019 | **Comments:** |
| **Loan Due Date:** ___6-21___ , 2025 | |

1.  This Promissory Note ("Note") is executed and delivered pursuant to the Loan and Security Agreement dated October 18, 2010 ("Agreement") between A. G. DILLARD, INC. ("Customer") and 1st Source Bank ("Bank"). This Note memorializes a "loan" as defined in and made under the Agreement. All terms that are capitalized in this Note which are not otherwise defined in this Note shall have the meanings ascribed in the Agreement. This Note is secured by, and subject in all respects to, the terms and conditions contained in the Agreement, all of which are incorporated by reference into this Note. These terms and conditions cover, among other things, events and circumstances that constitute a default by Customer, and Bank's rights and remedies in respect of a Customer default. This Note is secured by Collateral as provided in the Agreement, and in particular by the Collateral described in the specific Collateral Schedule attached to this Note.

2.  Customer promises to pay to Bank or to Bank's order, at such office as Bank may direct, the unpaid principal balance of this Note and all other sums which become due under the Loan Agreement, with interest commencing on the Loan Funding Date at the Interest Rate per annum specified herein, according to the Payment Schedule described above. The entire balance due under this Note is due and payable in full on the Loan Due Date.

3.  This is a "term" loan, and is not a revolving credit arrangement. Customer has no right to receive a re-advance in the future of loan proceeds due to payments or other principal reductions in this Note. If the Total Amount of Loan shown above is not fully disbursed at the Loan Funding Date, then Bank reserves the right to decline to make any further disbursement after 180 days from the Loan Funding Date or if a default (as defined in the Agreement) exists. If Bank makes any further disbursements, then, for each disbursement, Bank may recompute the amortization and repayment schedules and notify Customer of the recomputed payment schedule.

4.  Customer may prepay the entire unpaid principal balance of the Loan applicable to any item or items of Equipment at any time. Any prepayment of principal that is a direct result of Customer selling or otherwise disposing, other than to an affiliated company, of the item(s) in the ordinary course of Customer's business to which Bank has consented ("ordinary course prepayments") shall not be subject to any early breakage fee. If Customer makes a prepayment other than an ordinary course prepayment (including a payment of principal due after acceleration of the Loan following default), Customer shall also pay Bank an early breakage fee to compensate Bank for actual and potential loss of return on prepaid amounts and for costs associated with processing prepayments. The early breakage fee shall be equal to one percent (1%) per annum of the amount prepaid for each year (and for any partial year, which shall be rounded up to a whole year) remaining in the scheduled term of the Loan, measured from the date of prepayment. Partial prepayments shall be applied against payment installment obligations in inverse order of maturity unless the Bank agrees in its sole discretion to recalculate the required installment payments by spreading the remaining unpaid principal balance over the remaining term of the Loan resulting in a recast schedule of installment payments having due regard for the interest specified for the Loan. If so, Bank will notify Customer of the recast schedule.

Executed by Customer on ___6-18___ , 2019

**A. G. DILLARD, INC.**

By: _____
    Alan G. Dillard, III, President

**BANK TO COMPLETE:**
Loan Funding Date: ___6-21___ , 2019

A. G. DILLARD, INC.
EXHIBIT A

The following collateral is financed for a period of seventy-two (72) months at a rate of 4.9% for the Amount Advanced $4,669,573.44 plus Fees $800.00 for a Total Amount of Loan of $4,670,373.44.

| Unit | Serial Number | Value | Payment | Due Date |
|------|---------------|-------|---------|----------|
| Caterpillar Model 299D2 Skid Steer | FD201412 | $14,552.21 | 71 @ $234.50 P&I; 1 @ Remaining P+I | 7/21/19 10/21/25 |
| Caterpillar Model 299D2 Skid Steer | FD203451 | $63,653.88 | 71 @ $1,024.74 P&I; 1 @ Remaining P+I | 7/21/19 10/21/25 |
| Caterpillar Model 299D2 Skid Steer | FD203778 | $60,635.31 | 71 @ $976.11 P&I; 1 @ Remaining P+I | 7/21/19 10/21/25 |
| Caterpillar Model 299D2 Skid Steer | FD204585 | $83,375.35 | 71 @ $1,342.07 P&I; 1 @ Remaining P+I | 7/21/19 10/21/25 |
| Caterpillar Model 299D2 Skid Steer | FD204586 | $81,925.64 | 71 @ $1,318.77 P&I; 1 @ Remaining P+I | 7/21/19 6/21/25 |
| Caterpillar Model 299D2 Skid Steer | FD204588 | $84,807.71 | 71 @ $1,365.14 P&I; 1 @ Remaining P+I | 7/21/19 10/21/25 |
| Caterpillar Model 299D2 Skid Steer | FD204589 | $84,807.71 | 71 @ $1,365.14 P&I; 1 @ Remaining P+I | 7/21/19 10/21/25 |
| Caterpillar Model 299D2 Skid Steer | FD204709 | $111,590.08 | 71 @ $1,796.12 P&I; 1 @ Remaining P+I | 7/21/19 10/21/25 |
| Caterpillar Model 305E2CR Hydraulic Excavator | H5M06383 | $50,748.14 | 71 @ $817.00 P&I; 1 @ Remaining P+I | 7/21/19 10/21/25 |
| Caterpillar Model 305E2CR Hydraulic Excavator | H5M03126 | $21,533.68 | 71 @ $346.87 P&I; 1 @ Remaining P+I | 7/21/19 10/21/25 |
| Caterpillar Model 305E2CR Hydraulic Excavator | H5M06544 | $50,338.20 | 71 @ $810.38 P&I; 1 @ Remaining P+I | 7/21/19 10/21/25 |
| Caterpillar Model 305E2CR Hydraulic Excavator | H5M06650 | $51,381.27 | 71 @ $827.22 P&I; 1 @ Remaining P+I | 7/21/19 10/21/25 |
| Caterpillar Model 305E2CR Hydraulic Excavator | H5M07746 | $59,076.67 | 71 @ $951.08 P&I; 1 @ Remaining P+I | 7/21/19 10/21/25 |
| Caterpillar Model 305E2CR Hydraulic Excavator | H5M08346 | $73,571.48 | 71 @ $1,184.31 P&I; 1 @ Remaining P+I | 7/21/19 10/21/25 |
| Caterpillar Model 305E2CR Hydraulic Excavator | H5M08351 | $73,571.48 | 71 @ $1,184.31 P&I; 1 @ Remaining P+I | 7/21/19 10/21/25 |
| Caterpillar Model 314ELCR Hydraulic Excavator | ZJT01445 | $80,603.30 | 71 @ $1,297.5 P&I; 1 @ Remaining P+I | 7/21/19 10/21/25 |
| Caterpillar Model 320ELRR Hydraulic Excavator | TFX00767 | $97,294.48 | 71 @ $1,566.12 P&I; 1 @ Remaining P+I | 7/21/19 10/21/25 |
| Caterpillar Model 320ELRR Hydraulic Excavator | TFX01217 | $86,006.09 | 71 @ $1,384.46 P&I; 1 @ Remaining P+I | 7/21/19 10/21/25 |
| Caterpillar Model 323-07 Hydraulic Excavator | RAZ00750 | $190,784.51 | 71 @ $3,070.62 P&I; 1 @ Remaining P+I | 7/21/19 10/21/25 |
| Caterpillar Model 323FL Hydraulic Excavator | YEJ10254 | $157,539.75 | 71 @ $2,535.62 P&I; 1 @ Remaining P+I | 7/21/19 10/21/25 |
| Caterpillar Model 326FL Hydraulic Excavator | WGL00260 | $76,952.76 | 71 @ $1,238.72 P&I; 1 @ Remaining P+I | 7/21/19 10/21/25 |
| Caterpillar Model 330FL Hydraulic Excavator | MBX10661 | $232,185.79 | 71 @ $3,736.92 P&I; 1 @ Remaining P+I | 7/21/19 10/21/25 |
| Caterpillar Model 335FLCR Hydraulic Excavator | SGJ20108 | $287,941.06 | 71 @ $4,634.19 P&I; 1 @ Remaining P+I | 7/21/19 10/21/25 |
| Caterpillar Model 336FL Hydraulic Excavator | RKB01866 | $140,093.93 | 71 @ $2,254.90 P&I; 1 @ Remaining P+I | 7/21/19 10/21/25 |
| Caterpillar Model 420F2IT Integrated Tool Carrier | HWD03014 | $105,329.68 | 71 @ $1,695.40 P&I; 1 @ Remaining P+I | 7/21/19 10/21/25 |
| Caterpillar Model 730C Articulated Hauler | TFF01346 | $140,038.26 | 71 @ $2,254.00 P&I; 1 @ Remaining P+I | 7/21/19 10/21/25 |
| Caterpillar Model 730C2 Articulated Hauler | 2T400701 | $318,300.83 | 71 @ $5,122.73 P&I; 1 @ Remaining P+I | 7/21/19 10/21/25 |
| Caterpillar Model 730C2 Articulated Hauler | 2T400857 | $334,055.61 | 71 @ $5,376.32 P&I; 1 @ Remaining P+I | 7/21/19 10/21/25 |
| Caterpillar Model 730C2 Articulated Hauler | 2T401040 | $348,954.19 | 71 @ $5,616.09 P&I; 1 @ Remaining P+I | 7/21/19 10/21/25 |
| Caterpillar Model 815FII Compactor | BYN01193 | $183,182.90 | 71 @ $2,948.33 P&I; 1 @ Remaining P+I | 7/21/19 10/21/25 |
| Caterpillar Model CB34B Compactor | XB400625 | $59,969.41 | 71 @ $965.44 P&I; 1 @ Remaining P+I | 7/21/19 10/21/25 |

| | | | | |
|---|---|---|---|---|
| Caterpillar Model CB8 Compactor | JL400120 | $115,137.27 | 71 @ $1,853.24 P&I; 1 @ Remaining P+I | 7 / 21 /19 6 / 21 /25 |
| Caterpillar Model CP44 Compactor | MPC00331 | $36,255.51 | 71 @ $583.77 P&I; 1 @ Remaining P+I | 7 / 21 /19 6 / 21 /25 |
| Caterpillar Model CP44B Compactor | 4P400246 | $122,850.65 | 71 @ $1,977.40 P&I; 1 @ Remaining P+I | 7 / 21 /19 6 / 21 /25 |
| Caterpillar Model CS54B Compactor | CS500528 | $108,611.34 | 71 @ $1,748.24 P&I; 1 @ Remaining P+I | 7 / 21 /19 6 / 21 /25 |
| Caterpillar Model CS56B Compactor | S5600217 | $36,888.72 | 71 @ $594.00 P&I; 1 @ Remaining P+I | 7 / 21 /19 6 / 21 /25 |
| Caterpillar Model D6K2LGP Crawler Tractor | EL700491 | $220,804.07 | 71 @ $3,553.75 P&I; 1 @ Remaining P+I | 7 / 21 /19 6 / 21 /25 |
| Caterpillar Model D6K2LGP Crawler Tractor | JTR00893 | $165,567.78 | 71 @ $2,664.82 P&I; 1 @ Remaining P+I | 7 / 21 /19 6 / 21 /25 |
| Caterpillar Model D6NXL Crawler Tractor | PER00698 | $55,302.51 | 71 @ $890.28 P&I; 1 @ Remaining P+I | 7 / 21 /19 6 / 21 /25 |
| Wacker-Neuson Model RTLX-SC3 Roller | 24331969 | $3,354.23 | 71 @ $54.13 P&I P&I; 1 @ Remaining P+I | 7 / 21 /19 6 / 21 /25 |

**All payments above consist of principal and interest on the entire principal balance at the Interest Rate, commencing on the above due dates and then payable on the same day of each succeeding month continuing until the number of payments set forth above have been made. The final payment consists of the outstanding balance including principal, interest, and any other unpaid monetary obligations of Customer to Bank.





*Retail/Owner/Operator*
*App No. 6114104*

## SCHEDULE "A"

This Schedule A becomes a part of the Loan and Security Agreement dated October 18, 2010 ("Agreement") between A. G. DILLARD, INC. ("Customer") and 1st Source Bank ("Bank") by Customer's act of requesting funding and Bank's act of advancing funds in respect of the property described below, which property shall be included as "Equipment" in the "Collateral" (as defined in the Agreement).

1.    The equipment listed below is included as Equipment:

Caterpillar Model 299D2 Skid Steer S/N FD201412
Caterpillar Model 299D2 Skid Steer S/N FD203451
Caterpillar Model 299D2 Skid Steer S/N FD203778
Caterpillar Model 299D2 Skid Steer S/N FD204585
Caterpillar Model 299D2 Skid Steer S/N FD204586
Caterpillar Model 299D2 Skid Steer S/N FD204588
Caterpillar Model 299D2 Skid Steer S/N FD204589
Caterpillar Model 299D2 Skid Steer S/N FD204709
Caterpillar Model 305E2CR Hydraulic Excavator S/N H5M06383
Caterpillar Model 305E2CR Hydraulic Excavator S/N H5M03126
Caterpillar Model 305E2CR Hydraulic Excavator S/N H5M06544
Caterpillar Model 305E2CR Hydraulic Excavator S/N H5M06650
Caterpillar Model 305E2CR Hydraulic Excavator S/N H5M07746
Caterpillar Model 305E2CR Hydraulic Excavator S/N H5M08346
Caterpillar Model 305E2CR Hydraulic Excavator S/N H5M08351
Caterpillar Model 314ELCR Hydraulic Excavator S/N ZJT01445
Caterpillar Model 320ELRR Hydraulic Excavator S/N TFX00767
Caterpillar Model 320ELRR Hydraulic Excavator S/N TFX01217
Caterpillar Model 323-07 Hydraulic Excavator S/N RAZ00750
Caterpillar Model 323FL Hydraulic Excavator S/N YEJ10254
Caterpillar Model 326FL Hydraulic Excavator S/N WGL00260
Caterpillar Model 330FL Hydraulic Excavator S/N MBX10661
Caterpillar Model 335FLCR Hydraulic Excavator S/N SGJ20108
Caterpillar Model 336FL Hydraulic Excavator S/N RKB01866
Caterpillar Model 420F2IT Integrated Tool Carrier S/N HWD03014
Caterpillar Model 730C Articulated Hauler S/N TFF01346
Caterpillar Model 730C2 Articulated Hauler S/N 2T400701
Caterpillar Model 730C2 Articulated Hauler S/N 2T400857
Caterpillar Model 730C2 Articulated Hauler S/N 2T401040
Caterpillar Model 815FII Compactor S/N BYN01193
Caterpillar Model CB34B Compactor S/N XB400625
Caterpillar Model CB8 Compactor S/N JL400120
Caterpillar Model CP44 Compactor S/N MPC00331
Caterpillar Model CP44B Compactor S/N 4P400246
Caterpillar Model CS54B Compactor S/N CS500528
Caterpillar Model CS56B Compactor S/N S600217
Caterpillar Model D6K2LGP Crawler Tractor S/N EL700491
Caterpillar Model D6K2LGP Crawler Tractor S/N JTR00893
Caterpillar Model D6NXL Crawler Tractor S/N PER00698
Wacker-Neuson Model RTLX-SC3 Roller S/N 24331969

2.    The Equipment shall be used primarily for business or commercial use other than farming.

3.    Customer will not sell, lease or transfer ownership or possession of any of the Equipment to another person without Bank's prior written consent.

4.    Customer confirms and agrees that (check applicable box):

☒ Customer has inspected and accepted the Equipment as satisfactory in all respects

☐ Delivery of the Equipment is pending, and currently scheduled for _____

5.    **Note: If the Equipment is subject to a certificate of title statute, Customer is responsible for applying for certificates of title with Bank's lien noted thereon within ten (10) days from the date these units are financed by Bank.**

---

| *BANK TO COMPLETE* | |
|---|---|
| Loan Funding Date: _6-21_____ , 2019 | APPROVAL/INITIALS _RH____MB_ |

---

# EXHIBIT L



*App No. 6083008*

## PROMISSORY NOTE – Term

| | |
|---|---|
| *Customer hereby irrevocably instructs Bank to disburse the Loan proceeds as follows, or as otherwise specified by Customer:* | Amount Advanced:    $181,609.44 |
| | Fees:                          $300.00 |
| | Total Amount of Loan: $181,909.44 |
| $181,609.44 to Eastern Wrecker Sales Inc. | |

| Payment Type | Interest Rate |
|---|---|
| **Fixed Payment-Principal & Interest:** 59 monthly payments of $2,910.23, which consists of principal and interest on the entire principal balance at the Interest Rate, commencing on the First Payment Due Date and then on the same day of each succeeding month, plus 1 final payment on the Loan Due Date of the outstanding balance including principal, interest, and any other unpaid monetary obligations of Customer to Bank. | Fixed Rate: 5.1% per annum. |

| | |
|---|---|
| **First Payment Due Date:**  July _19_ , 2019 | **Comments:** |
| **Loan Due Date:**  June _19_, 2024 | The final payment due on the Loan Due Date will be $39,451.81 plus interest, and plus or minus the effect of the prepayments or late fees (if any) on this Note, the timing of receipt of monthly payments by Bank, and any other fees or expenses due and payable under this Note. |

1.  This Promissory Note ("Note") is executed and delivered pursuant to the Loan and Security Agreement dated October 18, 2010 ("Agreement") between A. G. DILLARD, INC. ("Customer") and 1st Source Bank ("Bank"). This Note memorializes a "loan" as defined in and made under the Agreement. All terms that are capitalized in this Note which are not otherwise defined in this Note shall have the meanings ascribed in the Agreement. This Note is secured by, and subject in all respects to, the terms and conditions contained in the Agreement, all of which are incorporated by reference into this Note. These terms and conditions cover, among other things, events and circumstances that constitute a default by Customer, and Bank's rights and remedies in respect of a Customer default. This Note is secured by Collateral as provided in the Agreement, and in particular by the Collateral described in the specific Collateral Schedule attached to this Note.

2.  Customer promises to pay to Bank or to Bank's order, at such office as Bank may direct, the unpaid principal balance of this Note and all other sums which become due under the Loan Agreement, with interest commencing on the Loan Funding Date at the Interest Rate per annum specified herein, according to the Payment Schedule described above. The entire balance due under this Note is due and payable in full on the Loan Due Date.

3.  This is a "term" loan, and is not a revolving credit arrangement. Customer has no right to receive a re-advance in the future of loan proceeds due to payments or other principal reductions in this Note. If the Total Amount of Loan shown above is not fully disbursed at the Loan Funding Date, then Bank reserves the right to decline to make any further disbursement after 180 days from the Loan Funding Date or if a default (as defined in the Agreement) exists. If Bank makes any further disbursements, then, for each disbursement, Bank may recompute the amortization and repayment schedules and notify Customer of the recomputed payment schedule.

4.  Customer may prepay the entire unpaid principal balance of the Loan applicable to any item or items of Equipment at any time. Any prepayment of principal that is a direct result of Customer selling or otherwise disposing, other than to an affiliated company, of the item(s) in the ordinary course of Customer's business to which Bank has consented ("ordinary course prepayments") shall not be subject to any early breakage fee. If Customer makes a prepayment other than an ordinary course prepayment (including a payment of principal due after acceleration of the Loan following default), Customer shall also pay Bank an early breakage fee to compensate Bank for actual and potential loss of return on prepaid amounts and for costs associated with processing prepayments. The early breakage fee shall be equal to one percent (1%) per annum of the amount prepaid for each year (and for any partial year, which shall be rounded up to a whole year) remaining in the scheduled term of the Loan, measured from the date of prepayment. Partial prepayments shall be applied against payment installment obligations in inverse order of maturity unless the Bank agrees in its sole discretion to recalculate the required installment payments by spreading the remaining unpaid principal balance over the remaining term of the Loan resulting in a recast schedule of installment payments having due regard for the interest specified for the Loan. If so, Bank will notify Customer of the recast schedule.

Executed by Customer on _6 - 18_ , 2019

**A. G. DILLARD, INC.**

By: _[signature]_

Alan G. Dillard, III, President

**BANK TO COMPLETE:**
Loan Funding Date: _6-19_ , 2019





Retail/Owner/Operator
*App No. 6083008*

# SCHEDULE "A"

This Schedule A becomes a part of the Loan and Security Agreement dated October 18, 2010 ("Agreement") between A. G. DILLARD, INC. ("Customer") and 1st Source Bank ("Bank") by Customer's act of requesting funding and Bank's act of advancing funds in respect of the property described below, which property shall be included as "Equipment" in the "Collateral" (as defined in the Agreement).

1. The equipment listed below is included as Equipment:  ~~should be a "J"~~

   2020 Kenworth T880 Truck VIN 1NKZL40X0L0385544 with Jerr-Dan 28'x102" (15-ton) Carrier

2. The Equipment shall be used primarily for business or commercial use other than farming.

3. Customer will not sell, lease or transfer ownership or possession of any of the Equipment to another person without Bank's prior written consent

4  Customer confirms and agrees that (check applicable box):

   ☑ Customer has inspected and accepted the Equipment as satisfactory in all respects

   ☐ Delivery of the Equipment is pending, and currently scheduled for _____

5. Note: If the Equipment is subject to a certificate of title statute, Customer is responsible for applying for certificates of title with Bank's lien noted thereon within ten (10) days from the date these units are financed by Bank.

---

*BANK TO COMPLETE*

Loan Funding Date: __6-19__ , 2019

APPROVAL INITIALS

# EXHIBIT M



**Specialty Finance Group**

DEMAND FOR PAYMENT

SENT BY USPS 1ST CLASS

P.O. Box 783
South Bend, IN 46624-0783

January 11, 2022

| | |
|---|---|
| A G Dillard Inc.<br>295 Memory Lane<br>Troy, VA 22974 | Alan Gault Dillard III<br>3858 Pennwood Farm<br>Charlottesville, VA 22902 |

Reference is made to the security agreements, promissory notes and other documents (collectively, the "Loan Documents"), by and between A G Dillard Inc. ("Customer") and 1st Source Bank ("Bank"). Bank made loans to Customer from time-to-time (the "Loan") secured by a security interests in certain equipment, property related thereto, and proceeds thereof (collectively and as further described in the Loan Documents, the ("Collateral").

Customer is in default under the Loan Documents. Among other things, Customer has failed to make payment when due. Bank hereby declares that the Customer in default. As a result, Bank is demanding the unpaid balance to be paid in full in the amount of **$71,412.31** immediately.

| Loan Number | Due Date | Past Due Amount |
|---|---|---|
| 992210080889 | 1/1/2022 | $2,683.63 |
| 992210081199 | 12/3/2021 | $5,531.58 |
| | 1/3/2022 | $5,531.58 |
| 992210083322 | 12/7/2021 | $2,689.07 |
| | 1/7/2022 | $2,689.07 |
| 992210083532 | 12/13/2021 | $1,379.87 |
| 992210087528 | 12/13/2021 | $7,255.00 |
| 992210096119 | 12/6/2021 | $2,724.83 |
| | 1/6/2022 | $2,724.83 |
| 992210097375 | 11/21/2021 | $2,724.83 |
| | 12/21/2021 | $2,724.83 |
| 992210098148 | 12/5/2021 | $2,724.83 |
| | 1/5/2021 | $2,724.83 |
| 992210099099 | 11/19/2021 | $2,910.23 |
| | 12/19/2021 | $1,773.36 |

F7783-SF

| Loan Number (Continued) | Due Date | Past Due Amount |
|---|---|---|
| 992210099237 | 11/21/2021 | $976.11 |
| | 12/21/2021 | $746.45 |
| 992210099240 | 11/21/2021 | $1,365.14 |
| | 12/21/2021 | $763.40 |
| 992210099242 | 11/21/2021 | $1,796.12 |
| | 12/21/2021 | $823.47 |
| 992210099251 | 11/21/2021 | $1,566.12 |
| | 12/21/2021 | $1,109.53 |
| 992210099268 | 11/21/2021 | $1,977.40 |
| | 12/21/2021 | $1,263.93 |
| 992210099271 | 11/21/2021 | $3,553.75 |
| | 12/21/2021 | $2,064.67 |
| 992210099272 | 11/21/2021 | $2,664.82 |
| | 12/21/2021 | $1,949.03 |
| **Total** | | **$71,412.31** |

Please remit payment of the foregoing amount immediately by wire transfer as follows:

> 1st Source Bank
> Attn:  Richard Rozenboom
> ABA:   071212128
> Acct No:  001411212214
> For: A G Dillard, Inc.

Alternatively, payment can be made by certified or cashier's check sent by overnight delivery to:

> 1st Source Bank
> Attn: Richard Rozenboom, 4th Floor
> 100 N. Michigan ST
> South Bend, IN 46601

In addition, this serves as notice that if the payment default continues, Bank will implement the default rate of interest set forth in the Loan and Security Agreement, increasing the rate by three percent (3%) per annum (the "Default Rate"). If imposed, the Default Rate shall apply retroactively to the date the default began. Bank is also entitled to continuing late charges, and any fees, costs and expenses incurred in connection with enforcing its rights and remedies under the Loan Documents and any other sums for which Customer is obligated under the Loan Documents and/or applicable laws.

Bank reserves all of its rights and remedies under the Loan Documents and applicable laws in the event Customer fails to remit the foregoing amount immediately.

Sincerely,

*Rick Rozenboom*

Richard Rozenboom
Senior Vice President

1st Source Bank
100 N. Michigan Street
South Bend, IN  46601
P  (574) 235-2440
F  (574) 235-2625
E  rozenboomr@1stsource.com

# EXHIBIT N



**Specialty Finance Group**

P.O. Box 783
South Bend, IN 46624-0783

## DEMAND AND ACCELERATION NOTICE

**SENT VIA UPS OVERNIGHT WITH SIGNATURE REQUIRED, USPS CERTIFIED MAIL, USPS 1ST CLASS**

DATE: 1/27/2022

| | |
|---|---|
| A G Dillard Inc.<br>295 Memory Lane<br>Troy, VA 22974 | Alan Gault Dillard III<br>295 Memory Lane<br>Troy, VA 22974 |

Reference is made to that certain (i) Loan and Security Agreement ("Agreement") executed October 20, 2010, (ii) Promissory Note – Term (Loan No. 992210080889) executed June 27,2018, (iii) Promissory Note – Term (Loan No. 992210081199) executed May 29, 2018, (iv) Promissory Note – Term (Loan No. 992210083322) executed September 5, 2018, (v) Promissory Note – Term (Loan No. 992210083532) executed September 12, 2018 (vi) Promissory Note – Term (Loan No. 992210087528) executed December 11, 2018, (vii) Promissory Note – Term (Loan No. 992210096119) executed April 23, 2019, (viii) Promissory Note – Term (Loan No. 992210097375) executed April 22, 2019, (ix) Promissory Note – Term (Loan No. 992210098148) executed April 23, 2019, (x) Promissory Note – Term (Loan No. 992210099099) executed June 18, 2019, and (xi) Promissory Note – Term (Loan No. 992210099235 - 9274) executed June 18, 2019, by and between A.G. Dillard, Inc. ("Customer") and 1st Source Bank ("Bank"), and (xii) a Guaranty of Payment executed October 20, 2010 and delivered by Alan G. Dillard III ("Guarantor"), and any amendment, modifications and alterations hereof, (collectively, the "Loan Documents").

Customer is in default under the Loan Documents. Among other defaults, Customer has failed to make payments when due. Bank hereby declares all of the remaining outstanding principal balance under the Loan Documents, all unpaid interest and late fees accrued thereon, and all other indebtedness due to Bank from Customer to be immediately due and payable. Pursuant to the Loan Documents, Bank shall implement the default rate set forth in the Loan and Security Agreement and increased the rate set forth in the Loan Documents by three percent (3%) per annum (the "Default Rate"). The Default Rate shall apply retroactively to the date the default began.

The total amount now due and payable and demanded immediately from Customer and Guarantor(s) (collectively, "Obligor") in respect to the Loan Documents, as of January 27, 2022 is $1,253,245.89.

Please remit payment of the foregoing amount immediately by wire transfer as follows:

      1st Source Bank, South Bend, Indiana
      Attn:   Richard Rozenboom
      ABA:   071212128
      Acct:   GL #001411212214
      Re:    A G Dillard, Inc.

F7783-SF

Alternatively, payment can be made by certified, or cashier's check sent by overnight delivery to:

      1st Source Bank
      Attn:  Richard Rozenboom
      100 N Michigan Street, 4th Floor
      South Bend, IN 46601

In addition, Bank is entitled to continuing late charges, any additional fees, costs and expenses incurred in connection with enforcing its rights and remedies, and any other amounts to which Bank is otherwise entitled under the Loan Documents and under applicable law. Tender of payment by Obligor any time after January 27, 2022, shall be subject to a final payoff calculation.  Obligor should contact the undersigned at (574) 235-2440 to obtain the final payoff amount after January 27, 2022.

To the extent Obligor fails to make payment in full as demanded herein, Bank hereby demands that Customer assemble the "Collateral" and immediately deliver same to Bank as Bank shall designate upon Customer's confirmation of readiness to make such delivery, and as otherwise provided under the Loan Documents.  Bank acknowledges that effective upon sale of the Collateral as demanded herein, Customer shall be entitled to a credit against all amounts owed under the Loan Documents, the amount of such credit to be determined as provided thereunder.

Bank reserves all its rights and remedies under the Loan Documents and applicable law in the event Obligor fails to remit the foregoing amount in full immediately. Receipt or acceptance of partial payment(s) of the amount accelerated and demanded herein shall not be construed as a reinstatement of the loan or Customer's status or a waiver of the Bank's rights or remedies under the Loan Documents and the Guaranty and/or applicable law.

Sincerely,

Richard Rozenboom
Senior Vice President
1st Source Bank
100 N. Michigan St.
South Bend, IN  46601
P  (574) 235-2440
F  (574) 235-2625
E  rozenboomr@1stsource.com

# EXHIBIT O

DATE        2/16/2022



BORROWER:          A G DILLARD INC
ACCOUNT NUMBER:    All Loans - See Attached

| | |
|---|---|
| PRINCIPAL BALANCE…………………………………………………………………… | $1,230,344.99 |
| INTEREST BALANCE…………………………………………………………… | $18,166.49 * |
| LATE FEES……………………………………………………………………… | $7,671.09 ** |
| LOAN FEES……………………………………………………………………… | $0.00 |
| LEGAL EXPENSES……………………………………………………………… | $0.00 |
| NON-LEGAL EXPENSES……………………………………………………… | $0.00 |
| SUBTOTAL | $1,256,182.57 |
| | |
| PREPAYMENT PENALTY…………………………………………………………… | $0.00 *** |
| PAYOFF PROCESSING FEE……………………......……………………………… | $0.00 |
| **TOTAL AMOUNT DUE:** | **$1,256,182.57** |

**PAYOFF DATE:  This payoff is only valid if funds received by this date**                    2/9/2022

PER DIEM INTEREST CHARGE AFTER PAYOFF DATE: Add if making payoff after above date        $175.06

**\* INTEREST IS FIGURED TO PAYOFF DATE.**

OVERNIGHT ADDRESS:               WIRE INSTRUCTIONS:
1ST SOURCE BANK                  BANK NAME - 1ST SOURCE BANK
ATTN: LOAN ACCOUNTING, 3RD FLOOR ROUTING/ABA # - 071212128
100 N MICHIGAN ST                ACCOUNT NAME - CONSTRUCTION EQUIPMENT
SOUTH BEND, IN 46601             ACCOUNT # - 001411212214
                                 REFERENCE:   A G DILLARD INC All Loans - See Attached

**FOR QUESTIONS, PLEASE CALL YOUR OFFICER RICK ROZENBOOM AT 574-235-2440.**

PLEASE ATTACH A COPY OF THIS LETTER WITH YOUR REMITTANCE.
                                 1ST SOURCE BANK

                                 BY: _Stephanie L Becvar_____

**AUTHORIZED SIGNATURE**         Stephanie L Becvar, Supervisor - Accounting

```
A G DILLARD INC                                    1ST SOURCE BANK                              PAGE      1
CUSTOMER NUMBER   0000529860                    PAYOFF QUOTE REPORT                          2-16-2022
PAYOFF DATE       2-09-22
SORT SEQUENCE     FILE ORDER

                                                                           PAYOFF NUMBER   202160002
                                                                           PRINTED BY      GAVINHTI
                                                                           DATE QUOTED     2-16-22
```

| BRCH | NOTE NUMBER | SHORT VIN UNIT NBR | PRINCIPAL BANK BAL | INTEREST BANK BAL | LATE FEE BANK BAL | LOAN FEE BANK BAL | PREPAYMENT BANK BAL | TOTAL BANK BAL | PER DIEM |
|---|---|---|---|---|---|---|---|---|---|
| 189 | 99221008089 | 9JM224925 | 61,499.18 | 565.63 | 839.48 | .00 | .00 | 62,178.99 | 8.95 |
| 189 | 99221008199 | 3KJ251048 | 162,533.40 | 2,258.03 | 403.35 | .00 | .00 | 165,721.17 | 23.43 |
| 189 | 99221008322 | 6KM258936 | 88,785.08 | 380.82 | 206.97 | .00 | .00 | 89,018.66 | 12.87 |
| 189 | 99221008532 | 6KP432903 | 28,781.26 | 338.34 |  | .00 | .00 | 29,369.05 | 4.28 |
| 189 | 99221087528 | -357/3300 | 170,877.81 | 2,368.62 | 1,182.11 | .00 | .00 | 174,398.26 | 26.01 |
| 189 | 99221096119 | 8LJ341524 | 109,824.90 | 1,692.57 | 544.96 | .00 | .00 | 112,735.48 | 14.20 |
| 189 | 99221096175 | XLJ341525 | 105,737.63 | 1,412.31 | 681.20 | .00 | .00 | 108,111.40 | 14.51 |
| 189 | 99221098148 | 1LJ341526 | 103,027.42 | 1,077.51 | 408.72 | .00 | .00 | 104,848.45 | 14.89 |
| 189 | 99221099099 | 0LJ335544 | 53,818.13 | 483.38 | 322.85 | .00 | .00 | 55,218.89 | 7.62 |
| 189 | 99221099237 | FD203778 | 50,169.13 | 542.59 | 221.12 | .00 | .00 | 50,873.58 | 4.11 |
| 189 | 99221099240 | FD204588 | 31,176.15 | 627.82 | 281.12 | .00 | .00 | 32,000.21 | 4.24 |
| 189 | 99221099242 | TPX00769 | 33,913.81 | 733.65 | 351.77 | .00 | .00 | 34,893.40 | 4.62 |
| 189 | 99221099251 | TPX00267 | 44,944.93 | 861.16 | 345.89 | .00 | .00 | 46,024.47 | 6.12 |
| 189 | 99221099266 | 4PX00246 | 51,369.25 | 713.05 | 423.01 | .00 | .00 | 52,653.42 | 6.99 |
| 189 | 99221099271 | EP400491 | 84,337.99 | 1,310.65 | 739.53 | .00 | .00 | 86,388.17 | 11.48 |
| 189 | 99221099272 | JTR00893 | 78,938.17 | 1,216.18 | 594.62 | .00 | .00 | 80,748.97 | 10.74 |

| | | GRAND TOTAL | 1,230,344.99 | 18,166.49 | 7,671.09 | .00 | .00 | 1,256,182.57 | 175.06 |

```
REMIT TO 1ST SOURCE BANK-LOAN ACCOUNTING
100 N MICHIGAN ST. SOUTH BEND, IN 46601
FOR INQUIRY PLEASE CALL 574-235-2502
END OF REPORT
```